Jay N. BILLINGS, Appellant,

v.

Billy J. STANLEY, Respondent.

No. WD 40211.

Missouri Court of Appeals,
Western District.

Aug. 23, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 4, 1988.

Application to Transfer Denied
Nov. 15, 1988.

Erwin L. Milne, Stockard, Andereck, Hauck, Sharp & Evans, Jefferson City, for appellant.

William L. Webster, Atty. Gen., Gary L. Gardner, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

Jay N. Billings sued Billy J. Stanley for personal injuries. The court entered judgment on a jury verdict in favor of Stanley. On appeal Billings complains about instructions and evidentiary rulings. Affirmed.

Billings was driving a truck loaded with soybeans from Versailles to Mexico, Missouri, in November of 1981. Billings pulled into the state weigh station at Kingdom City where Stanley was on duty as a commercial vehicle inspector. Stanley checked the weight of the Billings truck and called Billings into the scale house to show him the weight on the scale beam which revealed the truck to be overweight on gross weight. Billings thereupon drove his truck on to the scale from the opposite direction and after checking the weight in that manner Stanley advised Billings to park his truck and bring his paper work into the scale house. Billings took his paper work into the scale house and began a discussion with Stanley concerning the weight. Billings had a weight ticket from a private scale which indicated his truck was not overweight and argued from this that he should be allowed to shift his load in order to try to comply with the law. Stanley advised him that the problem was not with the weight on any one axle but with the fact that his gross weight was beyond the limit allowed. Stanley advised that under this circumstance it would be impossible to shift the load in order to bring the weight of the truck into compliance with the law and he would have to give Billings a ticket.

From this point the evidence diverged. Billings stated that while they were discussing the matter Stanley moved some distance away, gave a loud yell, and ran at Billings and struck Billings so that he was forced against both sides of the outside door and was caused to stumble down the steps. He contended that because of the force exerted by Stanley in ejecting him from the scale house he was caused serious injury to his back. This version was corroborated by the testimony of Billings' friend.

Conversely, Stanley testified that after he had written Billings a ticket they discussed the weight problem. Stanley stated that he requested Billings to leave but Billings refused and Stanley lightly placed his hands on Billings and led him out of the scale house. Under the Stanley version, Billings was not struck and did not hit the door as he went out and descended the steps in a normal manner. The Stanley version was corroborated in the main by two vehicle inspectors and a highway pa-

trol trooper who were present at the time of the altercation.

Although Billings pled both negligence and intentional striking and shoving, he submitted his case on the theory that he was intentionally shoved and thereby sustained injury. Stanley submitted an instruction in the form of MAI 32.09, modified in paragraph first by changing "plaintiff remained on defendant's premises" to "plaintiff remained on the premises" and by the deletion of a comma in paragraph second. This instruction submitted the affirmative defense of ejecting a trespasser by use of reasonable and necessary force. Billings contends the modification was improper because Stanley had no authority to tell Billings to leave the scale house. Billings contends that MAI 32.09 is designed as a defense for the owners of property and because Stanley did not own the scale house he could not assert the defense that he used only such force as was reasonable and necessary to remove Billings from the premises.

■ Stanley testified that he had authority to request Billings to leave the scale house and his testimony was not challenged or contradicted by Billings. In 6A C.J.S. *Assault and Battery* § 94, pg. 487 (1975), it is stated "one who is lawfully in charge of premises, and has requested another to leave whom he had a right so to request, may lawfully use as much force as is necessary to remove such other...."

Section 304.230.3, RSMo 1986, provides that commercial vehicle inspectors shall be appointed to supervise or operate weight stations. This provides statutory support for the testimony of Stanley that he had authority to request Billings to leave. Absent any evidence to the contrary, the instruction was supported by evidence and allowed the jury to find that Stanley did have authority to request Billings to leave. Given the authority to request Billings to leave, it follows that Stanley had the right to use reasonable force to cause Billings to leave when Billings refused to do so. Note 2 under MAI 32.09 states that the instruction given here is the proper instruction when a person lawfully entered the premises but declined to leave when requested to do so. That was the situation presented here, when Billings was requested to enter the scale house but thereafter refused to leave when requested to do so by Stanley.

■ It is Billings contention that only highway patrol troopers had the authority to request him to leave as they have the power of arrest, and Stanley does not. There is no requirement that a person must posses the power of arrest in order to have the authority to request another to leave the premises over which the person making the request has charge. Stanley testified he had authority to make the request that Billings leave and the statute lends support to that statement. In light of the evidence, the instruction was properly modified to state "the premises" instead of "defendant's premises."

No error is found in the removal of the comma in paragraph second. Nor is there any prejudicial error in the failure to note on the instruction that it was MAI 32.09 modified.

■ Billings next contends error in admitting the testimony of two vehicle inspectors and a highway trooper that Billings made statements after Stanley had left which displayed a racial bias on the part of Billings against blacks. Billings is white and Stanley is black. The witnesses related several statements of an obscene and profane nature made by Billings in reference to Stanley and his race. The objection was that such statements were irrelevant. In *Barraclough v. Union Pac. R. Co.*, 331 Mo. 157, 52 S.W.2d 998, 1002 (1932), the court quoted from a prior case that " 'the interest or bias of witnesses with respect to the issues on trial is never an irrelevant or collateral matter.' " Here, the jury was required to determine what happened in the scale house from two conflicting versions. One version was related by Billings and the other by Stanley. It follows as a matter of course that in determining the facts, the jury was required to pass on the credibility of Billings and Stanley. Certainly the fact that Billings was biased against Stanley on the basis of race would be relevant for the jury to consider in assessing the credibility

of Billings. Thus, the bias which Billings displayed by his statements against Stanley because of his race was relevant to give the jury a full picture of the parties and their attitude toward one another.

■ It should be noted that the showing of bias on the part of a witness is a matter of impeachment and it is necessary to lay a foundation before a witness may be impeached on that ground when such bias is to be proven by statements made by the witness. Thus, to make statements made by the witness admissible against him to show bias, it is first necessary to lay the proper foundation by asking the witness on cross-examination whether or not he made such statements thereby giving him an opportunity to explain. *Strahl v. Turner*, 310 S.W.2d 833, 844[15] (Mo.1958).

■ Although Stanley did not lay a foundation before asking the witnesses about the statements made by Billings, no objection was made on that ground. Hence, no error is preserved for review. *Cryts v. Ford Motor Co.*, 571 S.W.2d 683, 690[15] (Mo.App.1978).

■ Billings contends that the court erred in allowing Stanley's counsel to cross-examine Billings and his wife concerning Billings' arrest in December of 1986. The matter arose when Billings testified on direct examination that he went to visit his wife at their daughter's house and an altercation ensued between him and his son-in-law. Billings contended that he was in great pain at the time and after the altercation went to a hospital in Kirksville and later to the state hospital in Fulton. The implication from the direct examination was that he was in the hospital in Fulton for treatment to his back. On cross-examination it was brought out that Billings was arrested as a result of the altercation at his daughter's house and that he had been sent to Fulton State Hospital, under a court order, to determine his competency to stand trial and not for any treatment on his back. The fact of the arrest was brought out only by the cross-examination of Bill-

ings; it was not mentioned during the cross-examination of his wife. It is stated in 98 C.J.S. *Witness* § 382, pg. 143 (1957):

> A witness may, in the discretion of the court, be interrogated on cross-examination as to the details of an occurrence with respect to which he has testified in general terms on his examination in chief, or as to further particulars with respect to a matter or transaction as to which he has so testified.

Here, the jury could well have been misled into thinking Billings was in the hospital in Fulton for treatment when in reality he was not. The cross-examination about the arrest was necessary in order to bring out the full story as to why Billings was in that hospital. Furthermore, the trial court has wide discretion in setting a limit on cross-examination, particularly as to collateral matters. *State v. Kirk*, 636 S.W.2d 952, 955[11, 12] (Mo.1982). No abuse of discretion is shown.

■ Billings next contends that he should have been allowed to show that he was acquitted on the overweight charge for which Stanley wrote the summons. This contention is answered in *City of Advance v. Maryland Casualty Company*, 302 S.W.2d 28, 34[8] (Mo.1957). In that case recovery was sought as a result of an assault and battery in connection with an arrest for speeding. The plaintiff in that case sought to show that he had been acquitted of the speeding charge. The court held that the action was not founded on false imprisonment or malicious prosecution and that on the theory on which the case was tried, the acquittal on the speeding charge was a purely collateral matter. The court found no error in refusing to admit evidence of the acquittal. The same facts exist here, as the acquittal of Billings on the overweight ticket was purely a collateral matter which was within the discretion of the court to exclude.

■ Billings next contends the court erred in excluding official reports made by highway patrol troopers with reference to

the incident involving Billings which showed prior occurrences of Stanley striking other persons. The argument is made in Billings' brief that such evidence was admissible because it was relevant to prove Stanley's negligence. Billings overlooks the fact that he abandoned any theory of negligence when he elected to submit his cause on a theory of assault and battery. As stated in *Byers v. Spaulding*, 725 S.W. 2d 893, 895[1, 2] (Mo.App.1987), the same facts cannot give rise to a cause of action for both intentional tort and negligence. Thus, Billings was required to elect the theory on which he would submit his cause and chose the intentional tort of assault and battery. Thus, it is immaterial whether the report might have been admissible under a negligence theory when that theory was not submitted to the jury. It is stated in 6 Am.Jur.2d, *Assault and Battery* § 217, pg. 171 (1963), that "As a general rule, evidence of other but similar acts or assaults than the one for which an action is brought may not be admitted for the purpose of showing that the defendant committed the particular act with which he is charged." *See Johnston v. Wells*, 112 Mo.App. 557, 87 S.W. 70 (1905).

The only purpose for introducing the report would have been to attempt to show that because Stanley had been involved in similar incidents in the past, that Billings version of the incident at trial must be true. The evidence of prior similar incidents was not admissible for that purpose and the court correctly excluded the report.

There is some argument that the report was admissible for impeachment purposes but that ground was not raised in the motion for new trial and may not now be asserted on appeal. *Fallert Tool & Engineering Company, Inc. v. McClain*, 579 S.W.2d 751, 758[12, 13] (Mo.App.1979).

 Finally, Billings contends there was error in the instruction on the measure of damages. Because the jury found the issue of liability in favor of Stanley, any error in the instruction dealing with damages is harmless as the jury never reached

the issue. *Reynolds v. Jobes*, 565 S.W.2d 690, 698[19] (Mo.App.1978).

The judgment is affirmed.

All concur.