INSURANCE COMPANY OF NORTH AMERICA, Respondent,

v.

SKYWAY AVIATION, INC., Audrey Glore, as Statutory Trustee, Appellant.

No. WD 44110.

Missouri Court of Appeals, Western District.

Feb. 4, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 1992.

Application to Transfer Denied June 2, 1992.

---

Charles M. Wesley, Waynesville, for appellant.

Donald C. Bollard, Sherman, Taff & Bangert, Kansas City, for respondent.

Before SHANGLER, P.J., and BERREY and HANNA, JJ.

PER CURIAM.

This matter involves an interpleader action to determine entitlement to insurance proceeds. Audrey Glore, as statutory trustee of Skyway Aviation, Inc., appeals the denial of counterclaims against Insurance Company of North America ("INA"), the stakeholder in the interpleader action. On appeal, Glore claims errors in the denial of prejudgment interest, in a jury instruction on vexatious delay damages, and in the award of attorney fees and costs to INA.

We affirm.

In February 1980, a fire destroyed property at Skyway Aviation at Fort Leonard Wood. At that time, Skyway was covered by a fire insurance policy issued by INA. An independent insurance adjuster determined the fire loss to be $46,337 in July 1980. During further investigation, the adjuster learned of a transition in ownership of Skyway. As a result in September 1980, the adjuster directed INA to issue a draft for $46,337 payable to "Skyway Aviation, Inc. and as their interests may appear, Charles Jones, Audrey E. Glore, Jack. D. Hill, Myrtle Long Zelke, William A. Brooks, George Langworthy, and Harold Ottensman, loss payee." However, INA did not follow that directive because of concerns about the proper payees on the draft.

The fire occurred in the midst of an installment sale of Skyway's stock to Union Petrochem, Inc. of Texas. In October 1979, Glore, the majority shareholder of Skyway, contracted with Charles Jones for the sale of the Skyway stock owned by Glore to Union Petro for $400,000 in $50,-000 installments. After making its first payment, Union Petro received a pro rata transfer of Skyway shares, took over operations of Skyway, and transported the rolling stock of Skyway to Texas. Union Petro defaulted on the sales agreement in October 1980, owing Glore $350,000. Union Petro eventually lost its corporate good

standing and its president Charles Jones absconded.

Because Skyway Aviation forfeited its corporate charter in 1979 for nonpayment of franchise taxes, Glore and the other former officers and directors became statutory trustees of the defunct corporation pursuant to § 351.525, RSMo 1986 (Repealed 1990). In 1980 Glore as statutory trustee of Skyway was required to defend tax claims and numerous legal actions, including suits brought by Union Petro and the minority shareholders of Skyway. Union Petro ultimately dismissed its lawsuit, and Glore settled the shareholders' action in June 1983.

While Glore was embroiled in litigation, counsel for INA contacted attorneys representing Glore, the minority shareholders of Skyway, and Union Petro in November 1982 regarding payment of the proceeds. In correspondence and during discussions, the attorneys for the various factions asked INA to forestall filing an interpleader. After negotiating with all counsel, INA agreed in March 1983 to issue a draft for $46,337 payable to Republic Bank of Kansas City as escrow agent for Skyway Aviation in exchange for execution of a general release and indemnifying agreement. That agreement required signatures of a total of twenty-five entities and individuals, including Skyway Aviation, Union Petrochem, the loss payee on the policy, the statutory trustees of Skyway, and all shareholders of Skyway. Because all requisite releases could not be acquired, the draft was not delivered. In November 1983, INA informed counsel that it would place the matter on inactive status. INA deposited the $46,337 in a non-interest-bearing reserve account.

No activity occurred until September 1986, when new counsel hired by Glore contacted INA. Accepting counsel's proposal, INA agreed in September 1987 to issue another settlement draft for $46,337 in exchange for Glore's signing a release and indemnification agreement on behalf of all statutory trustees of Skyway Aviation, and obtaining a surety bond from an approved company. However, because Glore was unable to obtain that bond, the draft was not delivered. From late 1987 to early 1988, Glore's counsel and INA continued discussions, but could not arrive at a mutually acceptable solution. During those discussions, Glore's counsel requested INA to withhold legal action to permit settlement with another claimant.

INA filed its interpleader action in April 1988, and deposited $46,337 in the court registry in May 1988. The petition named as defendant-claimants Skyway Aviation, Glore and the other four statutory trustees of Skyway, the loss payee on the policy, Union Petrochem, Charles Jones, and an attorney who claimed a lien against the insurance proceeds for legal services rendered to Union Petro. Obtaining service on the claimants continued for nearly two years; Jones was eventually served by publication.

Of all the claimants, only Glore and the attorney claiming the lien filed answers and appeared at trial. Glore also filed a three-count counterclaim. Count I asserted Glore's exclusive entitlement to the insurance proceeds as statutory trustee. In Count II, Glore claimed prejudgment interest on the $46,337 from September 1980 until May 1988. Count III sought additional damages for vexatious delay pursuant to §§ 375.296 and 375.420, RSMo 1986.

Trial proceeded in May 1990 on Glore's counterclaims for prejudgment interest and for vexatious delay against INA. During trial Glore settled with the attorney claiming the lien, making Glore the only remaining claimant to the fund deposited in the court registry. The vexatious delay claim was submitted to a jury who decided in favor of INA and against Glore. In post-trial orders, the trial court denied Glore's claim for prejudgment interest on the fund.

Glore then instituted an appeal which was dismissed as premature because the trial court failed to designate entitlement to the fund on deposit in the court registry. As a result, the trial court awarded $23,-586.50 in attorney fees and $325.29 in additional costs be paid from the fund to INA and designated the remainder of the fund to Glore as statutory trustee.

*Prejudgment Interest*

In his first point, Glore contests the trial court's denial of Count II of his counterclaim which sought interest on the insurance fund prior to its deposit in the court registry. Glore asserts automatic entitlement to prejudgment interest, premising his claim on § 408.020, RSMo 1986, which provides in pertinent part:

Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; ....

■■■ Section 408.020, which applies to insurance contracts, mandates an award of prejudgment interest where a demand is made in the petition and the amount due under the contract is readily ascertainable. *Parker v. National Found. Life Ins.*, 805 S.W.2d 195, 197 (Mo.App.1991). Glore met the initial requirements under the statute by pleading in Count II entitlement to prejudgment interest on $46,337, the undisputed amount due under the insurance policy. INA failed to establish its affirmative defense of unconditional tender raised pursuant to § 514.240, RSMo 1986. INA's proposals to deliver a settlement draft were contingent upon obtaining releases, providing indemnification, or procuring a surety bond. Conditioning a proposed tender upon release of all claims or any other reciprocal action on the tenderee's part invalidates the tender and continues the accrual of prejudgment interest. *See Garney Companies v. H & K Development, Inc.*, 635 S.W.2d 85, 86 (Mo.App.1982).

■■■ However, in this case, Glore's compliance with § 408.020 and defeat of § 514.240 should provide no automatic right to prejudgment interest. Consideration of equitable principles of fairness and justice is appropriate when awarding prejudgment interest. *Catron v. Columbia Mut. Ins. Co.*, 723 S.W.2d 5, 7 (Mo. banc 1987). Such consideration becomes paramount in this case because it involves an interpleader action where a claimant seeks prejudgment interest against the stakeholder. Interpleader is an equitable remedy, existing independent of § 507.060, RSMo 1986, and Rule 52.07, and is governed by equitable principles. *Kearney Commercial Bank v. Deiter*, 407 S.W.2d 575, 579 (Mo.App.1966). In equity, allowance of prejudgment interest remains discretionary with the trial court. *Boyle v. Crimm*, 363 Mo. 731, 253 S.W.2d 149, 157 (1952). We conclude that, in interpleader actions, prejudgment interest need not be automatically allowed, but that its award should depend upon equitable considerations. *Cf. Moore v. Prindable*, 815 S.W.2d 25, 28 n. 2 (Mo.App.1991) (which stated in dictum that under certain conditions, prejudgment interest may be awarded against a stakeholder in an interpleader action).

■■■ Equitable considerations relevant to the award of prejudgment interest in an interpleader action include: whether the stakeholder used the fund for his benefit and would be unjustly enriched at the expense of the claimants; and whether the stakeholder unreasonably delayed in instituting the action or depositing the fund with the court. *Gelfgren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 82 (9th Cir.1982); *Bauer v. Uniroyal Tire Co.*, 630 F.2d 1287, 1290 (8th Cir.1980). The reasonableness of the stakeholder's delay depends on the circumstances of the case, with reference to such factors as (1) whether the stakeholder denied liability; (2) whether a bona' fide dispute existed among the claimants; (3) whether investigation or negotiation was necessary; (4) whether negotiations were conducted in good faith and with reasonable diligence; (5) whether the stakeholder was disinterested as among the claimants; (6) whether the interpleader action was vexatious; (6) whether the insurance policy provided for interest; (7) whether a claim for interest had been made prior to deposit. *Powers v. Metropolitan Life Ins. Co.*, 439 F.2d 605, 608 (D.C.Cir.1971).

■■■ Evidence and argument pertinent to the issues of unjust enrichment and unreasonable delay in this case are summarized below. On the matter of unjust enrichment, the parties presented conflicting evidence. A representative of INA testified that the company placed the $46,337 in a

non-interest-bearing reserve account. That representative who was an attorney opined that INA had no legal right to earn interest on the fund. Glore insisted that INA had the right to invest the fund during the eight years before its deposit in the court registry. Glore countered INA's evidence with the testimony of an expert in the insurance field who stated that reserve accounts constitute corporate assets which can be invested. Glore provided statutory and financial documentation in support of his contentions that INA had the right to invest and had actually earned interest on the fund before its deposit in the court registry.

Neither party disputed the fact that INA interpleaded the fund in May 1988, nearly eight years after receiving the directive from the adjuster to issue the draft in September 1980. However, the parties contested the reasonableness of the delay. Glore maintained that INA should have initiated the interpleader action in September 1980 when it first learned of the possibility of multiple claims. Insinuating that INA conducted the negotiations in bad faith, Glore claimed that INA placed unreasonable conditions upon delivery of the settlement drafts and wrongfully rejected appropriate proposals offered by Glore's counsel. Glore further maintained that INA could have promptly determined the entitlement to insurance proceeds because INA had notice of Union Petro's breach of the installment sales agreement and sufficient information about the other litigation involving Glore and Skyway Aviation. INA emphasized throughout trial its acknowledgement of liability on the policy and its willingness to pay. According to INA, it delayed in instigating legal action only at the request of counsel for the various claimants. INA provided copies of correspondence showing that counsel, including Glore's attorney, had repeatedly requested INA not to file an interpleader. INA noted that it had issued two settlement drafts for $46,337 and that no claim-

ant had requested interest during the lengthy negotiations.

From the evidence presented at trial, we find an appropriate basis for the trial court's denial of prejudgment interest under equitable principles. On the matter of unjust enrichment, the trial court, as trier of fact, was entitled to reconcile the conflicting evidence, including the expert testimony, and decide in favor of INA. In evaluating the reasonableness of the delay, the trial court was entitled to accord substantial weight to the requests by counsel to forestall filing the interpleader, as occurred in *Equitable Life Assurance Soc'y v. Miller*, 229 F.Supp. 1018, 1021 (D.Minn. 1964). In *Miller*, the court emphasized the preference for requiring an insurer who had admitted liability to interplead the conflicting claimants promptly. The *Miller* court also noted that nothing prevented continuing negotiations after filing the interpleader. *Id*. at 1021–22. However, in *Miller*, the decisive factors in denying prejudgment interest were the rival claimants' requests for forbearance from suit pending negotiations and no agreement by the insurer to pay interest. *Id*.

Additional factors supported the denial of prejudgment interest. INA's admission of liability on the policy and Glore's failure to request interest during negotiations were essentially uncontested. Evidentiary support existed for resolving in INA's favor the conflicts over the validity of the diverse claims to the fund and the integrity of the negotiations. Also noteworthy is the jury's denial of Glore's related claim for vexatious delay damages, which involved overlapping considerations.[1] We find no abuse of discretion in the result reached on Glore's claim for prejudgment interest. We, therefore, deny Glore's first point on appeal.

### Instructional Error

Glore's second point which asserts instructional error violates Rule 84.04(e)

---

1. Contrary to INA's assertion, Glore was not precluded from pursuing prejudgment interest on different theories. Numerous provisions for the allowance of prejudgment interest exist in equity and by statute, including §§ 408.020, 375.296, and 375.420. Such remedies are not inconsistent. Where two or more concurrent, consistent remedies exist, a party may prosecute one or all until satisfaction is had; however, satisfaction of one constitutes satisfaction of all. *Davis v. Hauschild*, 243 S.W.2d 956, 959–60 (Mo. 1951).

for failure to set out the contested instruction in the argument portion of the brief. Glore, nevertheless, maintains that Instruction 9, the damage instruction on the vexatious delay claim, confused and misled the jury because it failed to state his entitlement to the fund deposited in court registry.

Any error in instructing on damages constitutes harmless error when the jury finds no liability on the substantive claim. *Meeker v. Shelter Mut. Ins. Co.*, 766 S.W.2d 733, 744 (Mo.App.1989); *Billings v. Stanley*, 759 S.W.2d 277, 281 (Mo. App.1988). Here, the jury found in favor of INA on the vexatious delay claim. By its verdict, the jury never reached the issue of damages set forth in Instruction 9. We accordingly deny Glore's second point.

*Attorney Fees*

In his third point, Glore contends that the trial court erred in awarding to INA attorney fees of $23,586.50 and costs of $325.29 against the fund deposited in the court registry. In support, Glore challenges the propriety of the interpleader, contending that INA reasonably knew that neither Union Petro nor the attorney claiming the lien had colorable claims to the fund. Glore also argues that the award was improper because INA unreasonably delayed in filing and in litigating the interpleader, and in joining unnecessary parties.

Under equitable principles, costs of an interpleader action are awardable out of the fund to the stakeholder. *Badeau v. National Life & Accident Ins. Co.*, 305 S.W.2d 876, 879 (Mo.App.1957). Included in such costs are reasonable attorney fees. *Northwestern Nat'l Ins. Co. v. Mildenberger*, 359 S.W.2d 380, 387 (Mo. App.1962). Where interpleader properly lies, the stakeholder is entitled to costs. *Production Credit Ass'n v. Bertram*, 789 S.W.2d 173, 175 (Mo.App.1990). However, even where the interpleader is appropriate, the stakeholder's entitlement to costs and attorney fees remains discretionary with the trial court. *See General Am. Life Ins. Co. v. Wiest*, 567 S.W.2d 341, 345 n. 1 (Mo.App.1978). An interpleader is properly instituted where the stakeholder pleads

facts showing that (1) two or more persons have claims against the stakeholder and (2) the claims are of such a nature that the stakeholder is or may be exposed to double or multiple liability. *Commercial Bank of St. Louis Co. v. James*, 658 S.W.2d 17, 22 (Mo. banc 1983). The propriety of interpleader should not turn on the particular merits of the claims themselves, but on whether the stakeholder faces multiple vexation and litigation because of such claims, however groundless they ultimately may be. *Wiest*, 567 S.W.2d at 345 n. 1.

INA sufficiently pleaded a cause of action in interpleader. The averments in the petition provided a factual basis showing the existence of diverse claimants to the fund and INA's potential exposure to multiple liability. Glore's additional arguments have been considered in connection with his first point on appeal, and fail to demonstrate an abuse of discretion in awarding attorney fees. Glore's third point is denied.

We affirm the judgment, but deny INA's request for frivolous appeal damages.