Walter Raymond **TAUCHERT,** Plaintiff–Appellant,

v.

Russell **RITZ,** Defendant–Respondent.

No. 65299.

Missouri Court of Appeals, Eastern District, Division Two.

April 4, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 9, 1995.

Case Transferred to Supreme Court June 20, 1995.

Case Retransferred to Court of Appeals Nov. 27, 1995.

Original Opinion Reinstated Nov. 27, 1995.

David M. Duree, Reinert, Duree & Crante, P.C., St. Louis, for appellant.

Richard A. Wunderlich, Thomas L. Caradonna, Lewis, Rice & Fingersh, St. Louis, for respondent.

PUDLOWSKI, Judge.

William Tauchert appeals from the jury verdict of his personal injury action. The jury found Russell Ritz, the defendant, to be 28% at fault and Tauchert to be 72% at fault, but awarded zero damages to Tauchert.

We review the facts in a light most favorable to the verdict. Tauchert, at the time of the accident, had been an elevator mechanic apprentice at Westinghouse Elevator Company for three months. While on the project at which he was injured, he worked under the supervision of Ritz, an elevator mechanic. Before coming to work at Westinghouse, Tauchert had held substantially the same position for six months at Long Elevator Company. In addition to this work experience, Tauchert had also taken home study courses given by the Elevator Workers Union, including one on the rigging and hoisting of elevators.

On October 17, 1985, Tauchert was working under Ritz's supervision on a Boatmen's Bank building in Clayton, Missouri. He had been working on the project for approximately six weeks. Until October 16, Tauchert had been working exclusively on an electric traction elevator. On the day before the

accident, Ritz instructed Tauchert to assist him on a problem with hydraulic lift elevator which was part of the parking garage.

Ritz and Tauchert raised the elevator to the top floor. Prior to doing so, Ritz, with Tauchert's assistance, rigged a hoisting system so they could drain the hydraulic fluid and still be able to raise and lower the elevator manually. The accident occurred while Tauchert was raising the elevator using the rigging that he and Ritz had put together. While Tauchert was standing on top of the elevator, which had been raised to the top of the five-story shaft, the rigging broke. The elevator cab fell to the bottom of the shaft where Ritz had been working, pinning him beneath the cab.

As a result of the fall, Tauchert suffered compound fractures to both bones in the lower part of his leg. He had to undergo four surgeries on his leg, including muscle flap surgery and lengthening of his Achilles tendon. He continues to have problems with his right foot and ankle, particularly because his right big toe is unable to straighten and remains almost perpendicular to his foot. He also claims to have slight psycho-motor retardation. The uncontested evidence revealed that Tauchert incurred Thirty Thousand Two Hundred Fifty-four dollars and seventy-eight cents ($32,254.78) in actual medical expenses. In closing argument, defense counsel acknowledged these injuries by stating, "We all know he got hurt.... I don't have to defend that because there is no question the man got hurt.... Again I want to stress I'm not belittling this man's injuries. He was hurt." Tauchert also claimed depression as a result of the accident.

Tauchert, at the time of the accident, was not wearing his safety belt which he had received from his employer. In fact, he denied ever receiving one until confronted with the form which he had signed on which he acknowledged receipt of a safety belt.

After the jury returned its verdict, Tauchert filed his motion for a new trial which was denied. This appeal followed.

Tauchert raises two points on appeal. First, he contends that the trial court erred in permitting Ritz to testify that he was married and had children. Second, he avers that the trial court erred in submitting a jury instruction in the disjunctive rather than in the conjunctive and as such it granted the jury a "roving commission." We address the points in reverse order.

■ In his second point on appeal, Tauchert contends that the trial court erred in giving Instruction No. 7. He avers that because the instruction was given in the disjunctive rather than the conjunctive, it granted a roving commission to the jury. We agree.

The pertinent part of Instruction No. 7 read as follows:

In your verdict, you must assess a percentage of fault to plaintiff Walter Tauchert, whether or not defendant Russell Ritz was partly at fault, if you believe:

First, plaintiff Walter Tauchert assisted in the manner in which the hoisting mechanism was rigged, or failed to use his safety belt, and....

The part of the comparative fault instruction which lists the alleged acts of negligence by Tauchert states "[if you believe ...] plaintiff Walter Tauchert assisted in the manner in which the hoisting mechanism was rigged,...." This is a general statement regarding potential negligence. It requires no finding upon an ultimate fact. The jury need not find a specific act by Tauchert which was contributorily negligent. The second part of the comparative fault instruction which contains the alleged acts of negligence states "[if you believe ... plaintiff Walter Tauchert] ... or failed to use his safety belt,...." This is a specific act of negligence. This statement allows the jury to find upon an ultimate fact. In *Hicks v. Graves Truck Lines, Inc.*, 707 S.W.2d 439, 447 (Mo.App.W.D.1986) our colleagues in the Western District, in finding prejudicial error in a disjunctive verdict director, stated, "... it has long been the rule that a case may not be submitted on both general and specific negligence and the rule is equally applicable to MAI instructions. By submitting disjunctive charges, the jury is not confined to the factual issues but may speculate on other omissions in the nature of a roving commission." *See also, Lucky v. Avon Products,*

*Inc.,* 589 S.W.2d 364, 366 (Mo.App.1979). This is precisely what occurred in this case. The jury was left to speculate regarding Tauchert's negligence in assisting Ritz in the assembly of the rigging. The phrase "... Walter Tauchert assisted in the manner in which the hoisting mechanism was rigged ..." does not submit ultimate facts which define for the jury Ritz' specific theory of contributory negligence.

As a result, we hold that the comparative fault instruction failed to give the jury any real direction. Instruction No. 7 gave the jury a "roving commission" to consider other omissions which could lead to speculation. The instruction failed to submit in specific terms what act by Tauchert, regarding the rigging and hoisting of the elevator cab, was contributorily at fault. Accordingly, we hold that the trial court committed prejudicial error and thus grant a new trial.

We address Tauchert's first point on appeal due to the substantial likelihood that the situation will repeat itself at the new trial.

In his first point on appeal, Tauchert claims that the trial court erred by allowing prejudicial evidence that Ritz was married and had children. We disagree.

During Ritz's direct examination the following exchange took place:

Question: Are you married?

Answer: Yes.

Q: Is your wife Lisa?

Mr. Duree [Tauchert's counsel]: Objection.

Court: Overruled.

Q: Do you have children?

A: Yes.

Mr. Duree: Objection.

Court: Overruled.

Tauchert argues that these questions coupled with defense counsel's closing argument resulted in unfair prejudice to him and resulted in the jury verdict of zero damages.

At closing argument, Ritz's counsel made the following statements:

I want you to examine Mr. Tauchert and Mr. Ritz. You saw them both on the witness stand. You decide who was more candid with you.

Tauchert contends that Ritz's counsel was asking the jury to compare Ritz's background with Tauchert's. Tauchert, on direct examination, had admitted pleading guilty to burglary and driving while intoxicated in two unrelated incidents. We disagree with Tauchert's position.

■ Initially, we address the sufficiency of the objection and the preservation for appeal. We have previously held that an objection to a question should be so specific that the trial court can realize what rule of evidence is being invoked and why that rule would exclude a responsive answer. A bare objection to evidence on the grounds of relevancy and materiality is too general to preserve the trial court's ruling for appellate review. *Bailey v. Valtec Hydraulics, Inc.,* 748 S.W.2d 805, 808 (Mo.App.E.D.1988). *See also, Blount v. Peipers,* 864 S.W.2d 392, 393 (Mo.App.E.D.1993) (*citing Williams v. Bailey,* 759 S.W.2d 394, 397 (Mo.App.1988). In the case at bar, Tauchert's counsel simply stated "objection." No grounds, general or specific, were given. The cases cited by Tauchert for the proposition that a general objection is sufficient are not factually the same. The cited cases all state at least "irrelevancy" or "immateriality" or some general grounds upon which the objection is based. Clearly, Tauchert's counsel failed to state any grounds for the objection. Accordingly, we hold that the objection was too general to preserve the matter for appellate review.

■ Furthermore, Tauchert's counsel failed to object to Ritz's closing argument which allegedly prejudiced him. In *Moore v. Smith,* 657 S.W.2d 664, 667 (Mo.App.E.D. 1983), we held that the failure to object to remarks made during closing arguments did not preserve the point for appellate review. Therefore, we hold that because Tauchert's counsel did not object during closing arguments, the issue was not preserved for appellate review.

■ However, despite the deficiencies in the objections, we will review the merits of this point under Rule 84.13(c), the plain error standard, due to the substantial likelihood that the same issue will arise at the new trial.

We hold that, in this limited factual situation, there is no manifest injustice nor a miscarriage of justice as a result of these questions. The rule of law cited by Tauchert uniformly refers to asking plaintiffs their familial status. These questions are impermissible because they are irrelevant and designed to calculate sympathy with the jury. *Donze v. Swofford,* 368 S.W.2d 917, 921 (Mo.App.1963).

 In the case at bar, it was the defendant who was asked these questions at the very beginning of his direct examination. The answers were never mentioned again. Tauchert argues that Ritz's counsel used this information impermissibly. We disagree.

The portion of Ritz's closing argument cited by Tauchert is taken out of context. In context, Ritz's counsel was asking the jury to examine who was more credible on two crucial issues: 1) Tauchert's knowledge of rigging and hoisting; and 2) whether Tauchert had received a safety belt. During cross-examination, Tauchert had been impeached by Ritz's counsel on both of these crucial issues. During closing argument, the jury was asked to consider those points.

Due to the brevity of the inquiry regarding his familial status and because those facts were not referred to again, the questions were not prejudicial to Tauchert. However, if greater use of such evidence had been made and was properly objected to, we may be inclined to hold differently. Nevertheless, we hold, notwithstanding the deficiencies in the objections by Tauchert's counsel, there is no merit to Tauchert's first point on appeal.

We next address the points raised in the dissent. The dissent correctly states that the verdict rendered by the jury was inconsistent. The dissent cites *Douglass v. Safire,* 712 S.W.2d 373, 374 (Mo.banc 1986), in which the Missouri Supreme Court stated:

> We now hold that a claim that a verdict is inconsistent to the point of being self-destructive must be presented to the trial court before the jury is discharged. Otherwise the claim of inconsistency will be held to have been waived.

We believe that the issue of inconsistency is not properly before us and accordingly do not address it. Rule 84.13(a).

 The dissent alleges that Tauchert was not prejudiced by the faulty instruction because the jury awarded zero damages. We disagree. In the case law relied on by the dissent,[1] the juries found no negligence by the defendant and accordingly, the court in each of those cases found no prejudice to the plaintiff. We do not find an analogy between the finding of no negligence on the part of the defendant and the finding of no damages. In *Hyman v. Robinson,* 713 S.W.2d 300, 301 (Mo.App.E.D.1986), in discussing whether or not the instructional error created prejudice, the Court stated:

> The change in the legal significance of the plaintiff's fault from absolute preclusion of his claim under prior law to a basis for apportioning damages under the present law, means that an erroneously given instruction on plaintiff's negligence is of no significance unless the jury finds the defendant negligent. Until that has occurred the jury has no reason to consider the plaintiff's negligence.

In the case before us, the jury did find negligence on the part of the defendant. Therefore, the instructional error, according to *Hyman,* has significance. Furthermore, in comparative fault cases, the jury is instructed to determine the percentages of fault and the amount of damages. The interrelationship of fault and damages is apparent on the face of the instructions, and it would be a rare case in which a jury would not consider the effect of its determination of percentages of fault in terms of damages to be eventually awarded to the plaintiff. The issues are undeniably "blended and interwoven." *Phillips v. Lively,* 708 S.W.2d 369, 373 (Mo.App.W.D.1986). Although the concept that the amount of damages and percentages of fault are "blended and interwoven" is contrary to the jury instructions that the issues are to be separately determined, we must accept the practical reality of the observation. *Kramer v. Chase Resorts, Inc.,* 777

1. *Duren v. Kunkel,* 849 S.W.2d 145 (Mo.App. W.D.1993); *Insurance Company of North America v. Skyway Aviation, Inc.,* 828 S.W.2d 888 (Mo.App.W.D.1992); *Hyman v. Robinson,* 713 S.W.2d 300 (Mo.App.E.D.1986).

S.W.2d 647, 653 (Mo.App.E.D.1989). Given the considerable amount of substantial evidence concerning Tauchert's actual injuries and medical bills, we find that Tauchert was clearly prejudiced by the erroneous instruction.

We reverse and remand for a new trial on all issues in accordance with this opinion.

WHITE, J., concurs.

SMITH, P.J., dissents in separate dissenting opinion.

SMITH, Presiding Judge, dissenting.

I respectfully dissent.

The jury here found defendant 28% negligent and plaintiff 72% negligent. It then assessed plaintiff's damages at $0. The plaintiff made no challenge to the verdict at the time it was returned and before the jury was discharged. There was no dispute that plaintiff sustained a serious injury in the accident. Under the instructions the jury had to find damage to plaintiff in order to assess any negligence to defendant. It assessed negligence but found no damage. The verdict was therefore inconsistent. In *Douglass v. Safire,* 712 S.W.2d 373 (Mo. banc 1986) [1] the Supreme Court stated:

> "We now hold that a claim that a verdict is inconsistent to the point of being self-destructive must be presented to the trial court before the jury is discharged. Otherwise the claim of inconsistency will be held to have been waived."

The plaintiff has waived the inconsistency of the verdict. The jury finding of zero damages is not challenged here. Only a challenge to that finding as inconsistent or unsupported by the evidence would justify a reversal and remand. Neither contention is advanced on appeal.

The only issues raised by plaintiff are those discussed by the majority. The comparative fault instruction contention is premised upon error which was not prejudicial to the plaintiff. The jury found no damages to the plaintiff. Regardless of how the fault is apportioned the plaintiff receives nothing because the verdict determined there were no damages. Even if no comparative fault were found in plaintiff, and 100% were assessed against defendant, plaintiff's recovery would still be zero. The majority does not identify what prejudice arises from the alleged error in this comparative fault instruction. The situation is closely analogous to those found in *Duren v. Kunkel,* 849 S.W.2d 145 (Mo. App.1993) [4–6]; *Insurance Company of North America v. Skyway Aviation, Inc.,* 828 S.W.2d 888 (Mo.App.1992) [4–6]; *Hyman v. Robinson,* 713 S.W.2d 300 (Mo.App.1986) [1, 2]. In those cases the jury found no negligence by defendant, therefore no prejudice arose because of a faulty comparative instruction. Here the jury found no damages, therefore no prejudice arose from the allegedly faulty comparative fault instruction.

I agree with the majority that the reference to defendant's family status was not prejudicial.

I would affirm the judgment.