Stephany THOMPSON, Appellant,

v.

Candice MARLER, Respondent

No. SD 28823.

Missouri Court of Appeals, Southern District, Division Two.

May 20, 2009.

James E. Corbett, David T. Tunnell, Matthew W. Corbett, Corbett Law Firm, Springfield, for Appellant.

Nikki Cannezzaro, Franke, Schultz & Mullen, P.C., Kansas City, for Respondent.

JOHN E. PARRISH, Judge.

Stephany Thompson (plaintiff) appeals a judgment entered in favor of Candice Marler (defendant) in an action for personal injury and property damage that arose from an automobile accident. This court affirms.

Plaintiff and defendant were involved in an automobile accident that occurred near the intersection of Kearney Street and Ramsey Street in Springfield, Missouri. Plaintiff had been in the Hiland Dairy parking lot on the north side of Kearney. She intended to make a left turn and to proceed east on Kearney. She pulled into the center turn lane and was waiting to merge into the eastbound traffic.

About the same time as plaintiff was entering onto the center turn lane on Kearney, defendant was stopped in her vehicle in the northbound lane of Ramsey preparing to make a left turn in order to travel west on Kearney. The intersection of Ramsey and Kearney is slightly east of the entrance onto Kearney from the Hiland Dairy parking lot. After stopping at the stop sign where Ramsey intersects with Kearney and waiting for traffic on Kearney to clear, defendant proceeded to turn left into the westbound lane of Kearney. The left front of defendant's vehicle struck the right front of plaintiff's vehicle.

Plaintiff asserts that the accident was a result of defendant's negligence. Plaintiff sought damages for personal injuries to her neck and back and for property damage to her vehicle. The case was tried to a jury. The jury assessed 50% fault to plaintiff and 50% fault to defendant. It found that plaintiff sustained no damages for personal injuries and no damages for property damage.

Plaintiff raises three points on appeal. Point I is directed to the trial court permitting three witnesses to testify on behalf of defendant who had not been disclosed as witnesses in response to interrogatories. Points II and III assert instructional error; that the trial court erred in giving Instruction No. 9 to the jury.

■ Point I contends the trial court erred in allowing Nick McClure, Allison Rosado, and Jeremy Hill to testify on behalf of defendant at trial; that the witnesses had not been disclosed by defendant in response to Interrogatory Nos. 17 and 18 that plaintiff propounded to defendant. Plaintiff argues that she "was surprised by those witnesses and their testimony, and was not given sufficient opportunity to ascertain what their testimony would be, or to search for rebuttal witnesses or evidence."

Interrogatory No. 17 requested information known to defendant regarding persons who had information about the extent of plaintiff's injuries or her recovery from those injuries, information concerning the condition of plaintiff's health any time before the accident, or persons who had heard plaintiff make statements concerning her condition or had observed plaintiff engaging in any physical activity since the accident. Interrogatory No. 18 sought information about anyone known to defendant who purported to have information concerning plaintiff's health, earning capacity, character, and habits. Defendant answered both interrogatories, "None known to defendant." Defendant did not supplement the answers to the interrogatories prior to trial.

Nick McClure, Allison Rosado, and Jeremy Hill testified about plaintiff's activities after the accident. Prior to the witnesses testifying, plaintiff's attorney advised the trial court that he "suspect[ed] that [defendant's attorney was] going to call some witnesses with regards to what [plaintiff] did before and after, or—or at least after the collision, maybe before, and Question No. 17 was posed in the interrogatories." He added, "I'm not—I don't—I'm not trying to suppose what you're going to do, but just to forewarn you, 17 was posed and the answer was, 'None that I know of,' and that was never amended."

Defendant's attorney responded that defendant had not known of any witnesses to the circumstances to which the interrogatory was directed until the trial started. The trial court advised the attorneys that it would allow the witnesses to testify. Defendant's attorney told the court and plaintiff's counsel that defendant planned to call the school principal from the school plaintiff had attended and two other people who plaintiff had worked with. Plaintiff's attorney, for purposes of clarifying the record, then advised the trial court as follows:

[Plaintiff's attorney]: . . . I've been informed by counsel for the defendant that she is going to have witnesses that are going to testify as to the plaintiff's injuries, her physical abilities after May 9th, 2005, [the date of the accident] and perhaps before. We had Interrogatory No. 17. I've marked the interrogatory as Plaintiff's Exhibit 8, which I would offer as—in the form to support the objection. Particularly, we ask:

State the names, addresses, and present occupations and place of employment of all persons known to you, or anyone acting in your behalf:

A, who have any information concerning the extent of plaintiff's injuries or the extent of plaintiff's recovery from the injuries;

B, who have any information concerning the condition of plaintiff's health at any time before the collision;

C, who heard the plaintiff make any statement concerning her condition;

D, who has observed plaintiff engage in any physical activity since the date of the collision.

And then the answer to that was, None.

. . .

[Plaintiff's attorney]: . . . Question No. 18 was: State the name, present or last know address, present or last known place of employment, and present or last know telephone number of each person known to you or anyone acting in your behalf who was or purports to have any information concerning the health, earning capacity, character, and habits of the plaintiff.

And the answer was: None known to the defendant.

I've now been informed that there's going to be a number of witnesses, three or four in number, that are going to testify to the matters which we sought out—to find out in discovery for which there was none. So we would object to those people testifying. It's highly prejudicial, the case law says it's improper, and I think—

THE COURT: Why were—why were they not disclosed?

[Defendant's attorney]: They weren't known about. They were found since the testimony started in this case, in response to the—

THE COURT: You just—you just found out about them in the last couple of hours, is that what you're saying?

[Defendant's attorney]: Yeah.

[Plaintiff's attorney]: Well, the interrogatories—the interrogatories will be the basis for new trial or appeal, so—

THE COURT: Okay. Well, here's what we're going to do. We're going to—we'll—I'm going to allow the testimony. If it's an adverse judgment by the jury or finding by the jury, we'll take a look at it on new trial motions.

Defendant's attorney was permitted a further response. She told the trial court:

All right. Well, I—my response is simply that these are witnesses that are being called in response to the testimony that was given by the plaintiff and her family members in this case, and they are essentially being offered to impeach the testimony that's previously been set forth, and they're not touching upon any issue that hasn't been addressed by the plaintiff in this case. And additionally, that these witnesses just became known to the defendant.

The trial court asked how many witnesses defendant intended to call. Defendant's attorney replied, "Three." She represented that their testimony would be five minutes each.

Nick McClure testified that he had been the principal at the high school plaintiff attended at the time the collision occurred; that after the date of the collision, he had been a chaperone on a trip to Orlando, Florida, that plaintiff had taken with other students. He said he did not recall plaintiff having any complaints with her neck or back on the trip. He did not recall plaintiff having any problems riding amusement rides and roller coasters, although he did not recall what rides plaintiff rode. Mr. McClure said that plaintiff participated in music and drama at the school she had attended.

Allison Rosado had worked with plaintiff at Amberg Entertainment. She had been plaintiff's supervisor. Ms. Rosado said plaintiff's work required that she interact with children in the "inflatables" at the work place; that she serve cake, ice cream, and pizza; that she clean up after parties. Plaintiff had never informed Ms. Rosado of having experienced pain in her back or neck.

■ Jeremy Hill was a co-worker with plaintiff at Amberg Entertainment. He also worked with plaintiff on "Peace Child," a drama team "that travel[ed] around to different churches and perform[ed] a play about a missionary." Plaintiff had not complained to him about having pain in her neck or back. He had not observed plaintiff having any difficulty performing her duties at work.

It is well-established that the trial court is vested with broad discretion to choose a course of action during trial when evidence is challenged on the ground that it has not been disclosed by answers to interrogatories, and in the exercise of that discretion, the trial court may admit or reject such evidence. *Manahan v. Watson,* 655 S.W.2d 807, 808 (Mo.App.1983); *Aulgur v. Zylich,* 390 S.W.2d 553, 556 (Mo.App.1965). "Necessarily, a trial court first will determine whether in the particular situation the opposing party has been prejudiced," and in some instances, it may well find no prejudice has resulted. *Laws v. City of Wellston,* 435 S.W.2d 370, 375 (Mo. 1968).

*Vandever v. Jr. Coll. Dist. of Kansas City,* 708 S.W.2d 711, 719–20 (Mo.App.1986). *See also Schrieber v. Aslinger,* 11 S.W.3d 816, 818–19 (Mo.App.2000); *Brown v. St. Mary's Health Center,* 713 S.W.2d 15, 17–18 (Mo.App.1986).

This court does not find that the trial court abused its discretion in permitting the three witnesses to which Point I is directed to testify. Plaintiff does not ap-

pear to have been prejudiced by that testimony. Plaintiff's attorney cross-examined each witness extensively and effectively. Nick McClure admitted on cross-examination that he did not know what rides plaintiff rode on the school trip to Orlando. He could not say with certainty that plaintiff rode any particular ride on that trip. He did not know "one way or the other" if plaintiff reinjured her back during the school trip.

Allison Rosado's testimony was basically a description of plaintiff's job responsibilities at Amberg Entertainment. Jeremy Hill stated he had never actually seen plaintiff in some of the contact equipment—inflatables or bumper cars. His testimony was that he had observed plaintiff "playing with the kids, air hockey, video games ... standing arcade games." He stated that plaintiff's husband helped her with parties and clean-up. He also stated that plaintiff had a reputation with the drama team for trying to avoid manual labor; that he knew of only two occasions on which plaintiff had lifted any equipment.

The testimony of the witnesses was consistent with that of plaintiff. Plaintiff said she rode rides on the school trip. She said the rides worsened her pain and she had taken medication. She testified she had worked at Amberg Entertainment as a party coordinator. She stated that she had traveled as part of the drama team; that she took medication to alleviate pain during those trips. Plaintiff testified that there was nothing she was unable to do as a result of the collision, but that activity increased the pain in her back and neck. Point I is denied.

■ Points II and III are directed to Instruction No. 9, which states:

### INSTRUCTION NO. 9

In your verdict you must assess a percentage of fault to plaintiff, whether or not defendant was partly at fault, if you believe:

First, plaintiff stopped in the center lane, and

Second, plaintiff was thereby negligent, and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.[1]

■ Points II and III argue that the trial court erred in giving Instruction No. 9; that Instruction No. 9 erroneously permitted a finding of fault against plaintiff for stopping in the center turn lane at the location where the accident occurred (Point II); and because plaintiff's actions were not the proximate cause of the accident in that plaintiff had been stopped in the center turn lane prior to the collision and could have been seen if the other driver had maintained a careful lookout (Point III).

"If there is evidence from which a jury could find that plaintiff's conduct was a contributing cause of her damages, parties to a negligence action are entitled to have their case submitted to the jury under comparative fault principles, absent an agreement to the contrary." *Rudin [v. Parkway School Dist.,* 30 S.W.3d 838] at 841 [(Mo.App. 2000)]. If the comparative fault instruction is supported by substantial evi-

---

1. The copy of the instruction included in the legal file is not a copy of an instruction that was marked with the applicable MAI number. *See* Rule 70.02(a). It is helpful if copies of jury instructions included in legal files are copies of the instructions submitted to the trial court that have the MAI designation. It appears that Instruction No. 9 is based on MAI 32.01(1), a comparative fault instruction directed to a single negligent act.

dence, it is proper. *Id.* Such evidence is dependent upon the facts presented. *Id.*

*Buatte v. Schnuck Markets, Inc.,* 98 S.W.3d 569, 576 (Mo.App.2002). In considering the sufficiency of the evidence to support an instruction, the evidence is reviewed in the light most favorable to the submission of the instruction.[2] *Id.*

Instruction No. 9 is based on plaintiff's testimony that she had stopped in the center turn lane prior to defendant entering the center turn lane in defendant's attempt to make a left turn from Ramsey Street eastbound onto Kearney Street. Plaintiff asserted that defendant was negligent in failing to keep a careful lookout. Defendant claimed that the use of the center turn lane by plaintiff was negligent in that it constituted an attempt by plaintiff to enter the roadway from a side street.

Defendant elicited evidence on cross-examination from plaintiff's witness Joseph Rickman, a district traffic engineer for the Missouri Department of Transportation, that a driver's manual provided that the center turn lane was not to be used "when entering the roadway from a side street." Defendant contended this was what plaintiff did by pulling into the center turn lane and stopping in an attempt to enter into the eastbound lanes of Kearney Street. This evidence was sufficient to permit the trial court to give Instruction No. 9. Point II is denied.

■ In Point III plaintiff argues that it was error to give Instruction No. 9 because the evidence was that plaintiff had been stopped in the center turn lane prior to the collision; that plaintiff's failure to stop was not the proximate cause of the accident. As discussed in Point II, defendant asserted that plaintiff's use of the center turn lane was improper in that it was a use of that lane to enter into the roadway from a side street; that this was negligence on the part of plaintiff. On that basis, if the jury believed that plaintiff entered into the center turn lane and stopped, and that she was negligent in doing so, plaintiff's actions would have been a contributing factor in causing the accident and would constitute proximate cause. Point III is denied. The judgment is affirmed.

BURRELL, P.J., concurs in separate opinion.

RAHMEYER, J., concurs in separate opinion.

DON E. BURRELL, Presiding Judge, concurring in point I and in result only as to points II and III.

I write separately because I believe the comparative fault instruction (Instruction No. 9) propounded by defendant and submitted by the trial court was not supported by substantial evidence. No authority has been cited for the proposition that it is a violation of the rules of the road or is otherwise negligent for a motorist to come to a stop in the center turn lane of a five lane road. The district traffic engineer's direct examination testimony was that the center lane of the five lane road at issue was designed for at least two purposes: 1) to give drivers wanting to make a left turn from the lanes of travel a place to stop and wait for oncoming traffic to clear; and 2) to give drivers turning left from a parking lot or side street into the lanes of travel a place to stop and wait for oncoming traffic to clear so they can merge into those lanes.

---

**2.** Defendant contends that even if the comparative fault instruction were erroneous (which she denies), any claimed instructional error in that instruction "is ... of no practical consequence or significance" because the jury assessed plaintiff's damages at "none." *Tauchert v. Ritz,* 909 S.W.2d 687, 691 (Mo.App. 1995), holds otherwise.

The evidence most favorable to the submission of the instruction occurred during that witness's cross-examination when he acknowledged that the Missouri Department of Revenue's Driver's Guide[1] (the "driver's guide") "recommends" that the center lane not be used for this second purpose for which the lane was designed. No authority has been cited to support the Driver's Guide recommendation to "not use this lane when entering the roadway from a side street" as a rule of law. In fact, section 300.215—a portion of the Model Traffic Ordinance[2]—would suggest the contrary. That section provides, in relevant part:

> Where a special lane for making left turns by drivers proceeding in opposite directions have [sic] been indicated by official traffic control devices[[3]]: ... A vehicle shall not be driven in the lane except [1] when preparing for or making a left turn from *or into the roadway* or [2] when preparing for or making a u-turn when otherwise permitted by law.

(emphasis added). Thus, the model code promulgated by the legislature approves the use of this type of center lane (a designated two-way left turn lane) "when preparing for ... making a left turn ... into the roadway." Here, plaintiff did just that. Defendant's comparative fault submission was based on plaintiff's testimony that she made a left turn out of the parking lot, pulled into the center lane, stopped, and was preparing to merge right into traffic to complete her left turn into the roadway when defendant's vehicle struck her vehicle. Absent a showing that the actions plaintiff testified to violated one of the recognized rules of the road, there is no presumption that her conduct was negligent, and I do not believe that the district traffic engineer's cross-examination testimony (assumed as true) acknowledging that the driver's guide recommends against this particular use was probative of the question of whether plaintiff failed to exercise that degree of care that a very careful person would use under the same or similar circumstances when she pulled into the center turn lane and stopped.[4] *See* MAI[5] 11.01; section 304.012.1.

---

1. The driver's guide was not provided in the record, but we were able to discern the relevant portions from the testimony at trial. A current version of the driver's guide is available at http://dor.mo.gov/mvdl/drivers/dlguide/dlguide.pdf.

2. A set of state-approved traffic ordinances that become effective when adopted (in whole or in part) by any city's governing body. Section 300.600. Although no applicable city ordinance was before the trial court in this case, it is interesting to note that the city of Springfield has adopted the language of the model code and provides: ("Where a special lane for making left turns by drivers proceeding in opposite directions has been indicated by official traffic control devices: ... A vehicle shall not be driven in the lane except when preparing for or making a left turn from *or into the roadway* or when preparing for or making a U-turn when otherwise permitted by law.") (emphasis added). Springfield, Mo., Code section 106–184 (1981).

3. Section 300.010(19) defines "official traffic control devices" to mean "all signs, signals, markings and devices not inconsistent with this ordinance placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning or guiding traffic."

4. I do acknowledge that our Supreme Court has used the driver's guide as support for a conclusion it reached after construing two statutes, *see Reed v. Dir. of Revenue*, 184 S.W.3d 564, 567 (Mo. banc 2006) (construing the term "accident" to require either property damage or personal injury), but my research did not discover any cases holding that the driver's guide is adopted as a rule of law.

5. Mo. Supreme Court Comm. on Jury Instructions, Missouri Approved Jury Instructions 253

Secondly, even if being "stopped in the center lane" under these circumstances could be considered negligent, defendant presented no evidence that the reason for plaintiff being there (to merge instead of to turn) was the proximate cause of the collision. In other words, there was no showing that the fact that plaintiff's vehicle was standing motionless in the center turn lane because she was waiting to merge (not a recommended use according to the driver's guide) instead of being in that very same spot waiting to turn left onto a parking lot or side road (a use approved by the driver's guide) either caused or contributed to cause any damages plaintiff may have sustained. Although one could speculate that such evidence might consist of evidence that plaintiff was looking back over her right shoulder (waiting to merge) instead of looking forward (waiting to turn left) deprived her of an ability to see defendant's vehicle coming toward her and thereby deprive her of any chance to see the impending collision and attempt to take any action to avoid it, no such evidence was presented in this case. In addition, defendant's intervening negligence in striking plaintiff's motionless vehicle meant there was no evidence that the collision was the natural and probable consequence of plaintiff being stopped in the center lane to merge right instead of to turn left.

Despite my belief that the trial court's comparative fault instruction was not supported by substantial evidence, I concur in the result because I also believe that the jury's award of zero damages demonstrates that the error was harmless. "In any action for negligence, the plaintiff must establish the existence of a duty on the part of the defendant to protect plain-

tiff from injury, failure of the defendant to perform that duty and, that plaintiff's *injury* was proximately caused by defendant's failure." *Krause v. U.S. Truck Co.,* 787 S.W.2d 708, 710 (Mo. banc 1990) (emphasis added; citations omitted). "If the negligence causes no actual damages to plaintiff, defendant is entitled to a verdict." *Copeland v. Compton,* 914 S.W.2d 378, 382 (Mo.App. S.D.1996).

Because the jury in the instant case found defendant 50% at fault but also found that plaintiff suffered no damage, its verdict was inconsistent. In *Douglass v. Safire,* 712 S.W.2d 373 (Mo. banc 1986), our Supreme Court explicitly held that an inconsistent verdict must be brought to the attention of the trial court before the jury is discharged or the claim of inconsistency is waived. *Id.* at 374. Because plaintiff did not challenge the jury's finding of zero damages at trial, she has waived the inconsistency. "Once that waiver occurred, the trial court did not err in treating [the jury's verdict] as a verdict in favor of the [defendant]." *Hadley v. Burton,* 265 S.W.3d 361, 370 (Mo.App. S.D.2008).

In *Campbell v. Kelley,* 719 S.W.2d 769 (Mo. banc 1986), our Supreme Court noted that "[i]n suits involving unliquidated damages where the jury finds for plaintiff but does not award damages the federal courts treat the verdict as one for the defendant." *Id.* at 771. Although the Court did not explicitly adopt this rule in Missouri, it certainly cited it favorably, noting "[t]his result logically follows in negligence claims where unliquidated damages are an element of the cause of action." *Id.* As pointed out by the dissent in *Tauchert v. Ritz,* 909 S.W.2d 687 (Mo.App. E.D.1995), "[e]ven if no comparative fault were found in plaintiff, and 100% were assessed

(Stephen H. Ringkamp & Richard E. McLeod eds., West Group 6th ed.2002) (hereinafter MAI).

against defendant, plaintiff's recovery would still be zero." *Id.* at 692 (Smith, G., dissenting). Because I believe this case is not like *Tauchert*—where the defendant had conceded at trial that the plaintiff had suffered significant injuries [6]—I would affirm the trial court's judgment on the grounds that the jury's award of zero damages demonstrated a failure of one of the necessary elements of plaintiff's claim and rendered harmless the erroneous submission of Instruction No. 9.

### NANCY STEFFEN RAHMEYER, Judge, concurring.

I concur in the principal opinion as to point one; however, I do not want to reach the issue of whether or not the instruction given was error because, if it was, any such error was harmless based on the jury's zero damages award. A necessary element of plaintiff's claim failed, so comparative fault was a non-issue.

---

6. In the instant case, defendant contested plaintiff's assertion that she was injured as a result of the collision, and plaintiff's father testified that the vehicle plaintiff was driving was titled solely in his name. Although I question whether *Tauchert* is consistent with our Supreme Court's pronouncements in *Campbell* and *Douglass,* the question of whether this court should follow it can wait until the issue is unavoidably before us.