**WEEKS–MAXWELL CONSTRUCTION COMPANY, Inc., Appellant,**

v.

**BELGER CARTAGE SERVICE, INC.,**
Respondent.

No. 24360.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1966.

Henry G. Eager, James H. McLarney, Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, of counsel, for appellant.

William W. Shinn, Donald K. Hoel, Robert K. Waldo, Kansas City, Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, of counsel, for respondent.

MAUGHMER, Commissioner.

This is a suit for damages allegedly arising from the negligent operation of a heavy duty crane. There is little dispute as to the facts. The plaintiff, Weeks-Maxwell Con-

struction Company, is a general contracting company, located in Independence, Missouri, and engaged principally in the construction of sewer plants and hospitals in an area within a sixty mile radius of Kansas City, Missouri. In 1961, it contracted with the City of Independence, Missouri to construct the Sugar Creek Sewage Disposal Plant. Weeks-Maxwell was the general contractor for the whole job and was responsible for the property during the entire building period and until the finished construction was turned over to and accepted by the City of Independence.

As is usual in such matters, the plaintiff subcontracted various portions of the job. To the Kansas City Concrete or Castings Company went a subcontract to precast a large concrete beam, deliver it to the project and position it across the top of a large circular tank. This beam was approximately 55 feet long and weighed over 15 tons. The Castings Company in turn subcontracted the job of placing this beam in position to John Haggard, Jr., d/b/a Haggard Heavy Hauling. On Friday, August 17, 1962, two things became apparent to Haggard. First, the beam should be positioned on Monday, August 20, 1962, and second, none of Haggard's large heavy duty cranes would be available for use on that date. In the past in such emergencies, Haggard had used cranes belonging to the defendant Belger Cartage Service, Inc., and Belger had on occasion used Haggard's equipment. In any event, on Friday, August 17, John Haggard called Belger by telephone and talked with Albert Schons, crane operator, and made arrangements for Belger to have a Bay City 35 ton crane on the job on the following Monday morning. Gene Larson, Haggard's foreman on the job, knew and had worked before with one of Belger's crane operators, Virdus (Bill) Hurst, so it was requested that Hurst come also. Hurst, James Henak, an oiler, and the crane arrived on Monday morning. There is some little dispute as to whether the crane was a 35 ton type or not. It really makes little difference.

According to custom, Mr. Hurst brought with him Belger's written "work order" and it was signed by Gene Larson, foreman for Haggard, the lessee. In part it contained the following statements:

"7. The lessee understands and agrees that all control of and any rights of control over personnel and equipment furnished are expressly relinquished and surrendered by Belger Cartage Service, Inc., and assumes the exclusive right to supervise and control them during the continuance of this agreement.

"The lessee specifically agrees that there is a complete surrender of control in regard to the aforementioned employees and equipment and not simply a division of control. This lease is upon the agreement by Belger Cartage that no personnel may be replaced or substituted by Belger Cartage except at the direction and with the approval of the lessee and that the lessee shall have the right to control all of the details of operation of the equipment and personnel furnished.

"The person signing this agreement specifically represents that he has the right and authority to agree to the foregoing terms. Any disputes or disagreements concerning the right of control over personnel or equipment furnished shall be resolved in favor of such control being in the lessee".

This agreement described the equipment furnished as a 35 ton crane and named the personnel as "Hurst and J. Henak".

When Hurst arrived at the job site, he, Gene Larson and Henak set the crane in position. The ground was loose although it had been watered down and run over by a caterpillar, but it was not solid and therefore Mr. Larson secured some timbers to "shore up" around the crane and its outriggers. Hurst operated the crane. Larson was up on a wall, giving directions, largely by hand motions and was in charge. Another Haggard employee was on the ground helping direct. The large beam was

picked up, but before it could be placed in position the shoring timbers or the soft ground, or both, gave way, and the crane began to tilt. Mr. Hurst then dropped the beam. It was generally agreed he had no other wise alternative. The beam fell on part of the uncompleted construction, and under the agreement of all parties, caused damages of $5,178.93.

Thereafter, on May 8, 1963, an "assignment agreement" was entered into between Haggard Heavy Hauling, Kansas City Castings Company and Weeks-Maxwell Construction Company, Inc. The subject matter of the agreement was the accident of August 20, 1962, which we have just described. Under its terms Haggard agreed to pay to Castings Company and to Weeks-Maxwell the sum of $5,178.93, the amount agreed upon as the damage done to the uncompleted sewage treatment plant when the 15 ton beam was dropped and fell. This payment concededly was made by Haggard and all of it actually went to plaintiff, the prime contractor, which was ultimately liable to repair the damaged construction. This agreement also recited assignment and subrogation to Haggard of all claims which Castings Company and Weeks-Maxwell might have against Belger Cartage Service for damages arising from the accident.

Chronologically, the next event occurred on June 18, 1963, when Weeks-Maxwell and Kansas City *Concrete* Company filed the first petition in the present action against Belger Cartage Service. The Kansas City Concrete Company or Castings Company was early and voluntarily dismissed as a party plaintiff as it had no interest in the subject matter of the contest.

Knowledge that whatever claims Weeks-Maxwell and Kansas City Castings had against Belger had been assigned to Haggard having come to the attention of defendant, a motion to dismiss was filed on the ground that Haggard, a necessary party and the real party in interest, was not joined. Thereafter, on February 8, 1965, Haggard reassigned to Kansas City Con-

crete and Weeks-Maxwell the cause of action "for the sole purpose of controlling and distributing the net proceeds after expenses" to Haggard, which had already paid the full amount of the damages.

Defendant asserted before the trial court and before trial that even if Belger were negligent as plaintiff claimed, then at most Haggard and Belger were joint tort-feasors, and Haggard, having paid the damage claim in full, could not either in his own name or in the name of his assignee, maintain a suit or make a recovery against his joint tort-feasor. The trial court did not adopt this view of the law, and the case was apparently tried on the theory that plaintiff Weeks-Maxwell was the assignee of Haggard and was bringing and maintaining the suit for Haggard and any recovery would be for Haggard's benefit. Defendant was not allowed to show the payment by Haggard, but was allowed to show Haggard's negligence, which was treated as contributory negligence and as such would bar any recovery. Reception of the assignment and reassignment into evidence was also permitted. It should be noted that plaintiff sought to recover in this action $5,178.93, the exact amount which had been agreed upon as damages and the exact amount which had been paid to it by Haggard.

■ The verdict of the jury was for defendant Belger and judgment was entered accordingly. Plaintiff has appealed and makes three assignments of error. In its second assignment, plaintiff says the court erred in repeatedly allowing defendant to infer to the jury that Haggard had paid plaintiff for its damages and allowed introduction of the assignment and reassignment agreement, which recited such payments. It was plaintiff's final trial theory, we think, and the one which the trial court permitted it to go to trial upon, that plaintiff was suing as Haggard's assignee, and any recovery would be as trustee for Haggard. We believe the assignment and reassignment agreements were properly admitted. Without the reassignment, plain-

tiff could not maintain such an action. The cases cited by plaintiff to convince us otherwise, are under the theory that they are payments from collateral sources (sick leave benefits, Blue Cross, Social Security, Railroad Retirement). Without lengthy discussion, we rule this point against appellant.

Points I and III complain about Instruction No. 3, which we set out in full:

## "INSTRUCTION NO. 3.

"Your verdict must be for defendant, whether or not defendant was negligent, if you believe:

"First, that Gene Larson, John Haggard's foreman, either directed or joined in the positioning of such crane, or directed or joined in the shoring of such crane or knew or by using ordinary care could have known that it was dangerous to use such crane as so positioned and shored, and

"Second, Larson's conduct, in any one or more of the respects submitted in paragraph First, was negligent, and

"Third, such negligence of Larson directly caused or contributed to cause any damage plaintiff may have sustained.

"The term 'ordinary care' as used in this instruction means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances".

Plaintiff says Instruction No. 3 is erroneous because "it improperly imputed the negligence of Gene Larson, an employee of Haggard Heavy Hauling, which was not a party to the suit, to the plaintiff", and "even conceding that plaintiff was suing on Haggard Heavy Hauling's cause of action, Haggard's cause of action would be for indemnity and its negligence would not be a defense unless it was active, but said instruction did not require the jury to find that Larson was actively negligent and further all of the evidence shows that Larson was not actively negligent".

If we understand plaintiff's position correctly, it is not seeking a contribution between tort-feasors. In any event, such contribution is not permitted in Missouri except after a joint judgment. State ex rel. McClure v. Dinwiddie, en Banc., 358 Mo. 15, 213 S.W.2d 127. Among other contentions, plaintiff says its claim is not for contribution but for indemnity in toto. As a basis for this theory plaintiff seeks, as it must, to lay all the negligence on Belger. Ordinarily, this is a jury question. However, the jury here placed the blame not on Belger, but on Haggard. See Crouch v. Tourtelot, Mo., 350 S.W.2d 799, 803. The same rule is stated this way in Barb. v. Farmers Insurance Exchange et al., Mo., 281 S.W.2d 297, 304:

"It is the general rule, where one person has been exposed to liability and compelled to pay damages on account of the negligence of another, the first has a right of action against the other for indemnity where the parties are not *in pari delicto*. In cases where one party creates the condition which causes injury and the other does not join therein but is exposed to liability on account of it, the rule that one of two joint tortfeasors cannot maintain an action against the other for indemnity does not apply".

In any event, the plaintiff's suit here was under and by virtue of the reassignment of the cause of action by Haggard. Weeks-Maxwell had no other cause of action because its claim had been paid in full. As stated in 25 C.J.S. Damages § 3, pp. 627, 628:

"As a general rule, a person who has sustained loss or injury may receive no more than just compensation for the loss or injury sustained. He is not entitled to be made more than whole, and he may not recover from all sources an amount in excess of the damages sustained, or be put in a better condition than he would have been had the wrong not been committed".

The assignee of a cause of action takes it subject to the defenses that were available against the assignor.

In 6 C.J.S. Assignments § 114, pp. 1164, 1165, we find this statement:

"Generally, in the absence of an estoppel (see infra § 117), the assignee takes the assigned chose subject to all equities and defenses between the assignor and the debtor existing at the time of the assignment, and to arrangements made between the debtor and the assignor prior to the time when the debtor receives notice of the assignment, and this rule holds whether the assignment is legal or equitable".

We hold that the court did not err in giving Instruction No. 3. If Larson, who was foreman and in complete charge of the job for Haggard, plaintiff's assignor, was negligent, or contributorily negligent, then Haggard could not recover, nor could the plaintiff, standing in Haggard's shoes, recover. Appellant, in its brief and in its oral argument has advanced no other tenable or reasonable theory.

Appellant says that defendant inferred to the jury that Haggard had paid plaintiff for its damages and that this was prejudicial and amounted to reversible error. We do not think so. The assignment and reassignment agreements recite the payment and as nearly as we can tell, plaintiff finally went to trial as assignee.

As we examine this record and the written "work order" under which Belger's crane and two employees were "turned over" to Haggard for this job on August 20, 1962, we are unable to conclude that Belger or its employees had anything to do with the incident insofar as Belger is concerned. Belger's employees (Hurst and Henak) were on loan or lease to Haggard just as much as the crane—all were under the control and direction of Haggard. Belger had nothing to do with the job. Neither Belger ·nor its employees were vested with any authority over the crane, their own activities, or over the job. In our opinion no reasonable man could conclude otherwise. We believe the trial court should have considered—most seriously—directing a verdict for Belger. We have examined the record and have considered plaintiff's assignments of error. We find no reversible error. We believe the verdict and judgment were clearly for the right party.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion by MAUGHMER, C., is adopted as the opinion of the Court.

All concur.