Natalie DUCKETT, Respondent,

v.

Crista TROESTER, Appellant.

No. WD 56214.

Missouri Court of Appeals, Western District.

May 11, 1999.

As Modified June 29, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1999.

Application for Transfer Denied Aug. 24, 1999.

---

Mark T. Kempton, Sedalia, for Respondent.

Michael S. Dodig, Kansas City, for Appellant.

Before: SPINDEN, P.J., and EDWIN H. SMITH and RIEDERER, JJ.

EDWIN H. SMITH, Judge.

Crista Troester appeals from the circuit court's order granting the respondent, Natalie Duckett, a new trial on her petition for personal injuries. The trial court granted a new trial based on a finding that the appellant had impermissibly injected the issue of insurance into the case.

The appellant raises three points on appeal. She claims that the trial court erred in granting the respondent's motion for a new trial because: (1) the respondent was not prejudiced by her mentioning of insurance in her testimony; (2) she was immune from suit under the doctrine of official immunity; and (3) any recovery by the respondent was barred by the doctrine of implied primary assumption of risk.

We reverse and remand.

## Facts

The respondent was a student and varsity cheerleader at Central Missouri State University (CMSU). The appellant was the Assistant Athletic Director and Coordinator of Spirit Groups at CMSU. The cheerleading squad was one of the spirit groups for which she was the coordinator. As part of her duties as the coordinator, the appellant was responsible for providing advice and counsel, managing the budget, making travel arrangements, training, designing safety procedures, and developing the style and decorum of the various groups. As the assistant athletic director, she was, *inter alia,* responsible for managing the insurance program for all of the student athletes on campus. As to the cheerleading squad specifically, the appellant arranged for it to attend summer camps for instruction, met with the squad's captain and coach on a weekly basis, and arranged practice facilities as requested by the squad's captain and coach.

On September 16, 1993, the cheerleading squad was practicing in the multipurpose building on a rubber-covered concrete floor, with no padding. The squad was attempting to perform a "Kentucky Double High A Pyramid" for the first time. In this stunt, three cheerleaders stand on the bottom to form the base, three stand on the shoulders of the base cheerleaders, and two flyers stand on the forearms of the middle cheerleaders. The respondent was one of the flyers. At some point, the other flyer fell and the pyramid collapsed, with the respondent falling to the floor and hitting her head, sustaining injuries.

On April 8, 1996, the respondent filed a petition for damages against the appellant in the Circuit Court of Johnson County. In her petition, the respondent alleged that the appellant, in her capacity as assistant athletic director and coordinator, was negligent by failing to provide adequate supervision and training for the squad by not providing it a safe place to train and in failing to warn it of the dangers of conducting practices on hard surface floors.

She further alleged that as a direct and proximate result of the appellant's negligence she fell ten to fifteen feet, struck her head on the floor, and suffered personal injuries.

On April 17, 1997, the appellant filed a motion for summary judgment claiming that she was entitled to judgment as a matter of law because: (1) she was immune from suit under the doctrine of official immunity; (2) the respondent assumed the risk that resulted in her injury; and (3) she owed no duty to protect the respondent from the dangers that caused her injuries. The trial court overruled the motion. The case was tried to a jury beginning on April 8, 1998.

At trial, the respondent introduced evidence of the job description of the appellant. This description indicated, *inter alia*, that, as assistant athletic director, the appellant was responsible for coordinating the insurance program for student athletes. The job description also indicated that, as the coordinator, the appellant was responsible for training, designing safety procedures, and developing the style and decorum of the groups. During the respondent's testimony, her attorney asked her whether certain of her medical bills had been paid. In response, she testified that she was not sure because she was involved in a dispute with her insurance company.

At the close of the respondent's evidence, the appellant moved for a directed verdict. The motion was denied. She then introduced evidence. During the appellant's testimony on direct, her attorney asked her to explain her job duties as the assistant athletic director. She explained that one facet of her job was coordinating the insurance program for student athletes. The respondent did not object to this testimony. Thereafter, her attorney asked her what assistance students and student athletes received when they were injured while participating in activities on campus. The respondent's attorney objected to this question on the basis that it would inject into the case the issue of

whether the respondent's medical bills had been covered by a collateral source. The appellant's attorney informed the court that the appellant had been instructed not to mention the insurance program. The trial court overruled the respondent's objection. However, when the question was read back to the appellant, she stated, before her attorney could cut her off, that "we have insurance as provided." He then asked her specifically whether athletic trainers were available to assist the cheerleaders in the event of injury.

At the conclusion of the appellant's testimony, the respondent made an oral motion for a mistrial based on the appellant's reference to insurance. The respondent argued that the appellant had improperly injected the issue of insurance into the case, violating the collateral source rule and prejudicing her thereby. The trial court took the motion under advisement, allowing the trial to proceed. At the close of her evidence, the appellant made a second motion for a directed verdict, which was denied. The case was submitted to the jury on April 10, 1998.

During deliberations, the jury sent a note to the court requesting to see the appellant's job description and asking whether the respondent's medical bills had been paid by insurance. The trial court sent the jury a copy of the job description but advised that it could not answer the insurance question. Thereafter, the jury returned its verdict assessing zero percent fault to the appellant and to the respondent. On the docket sheet, the trial court indicated that the jury's verdict was accepted, the jury was discharged, and judgment would be entered accordingly.

On April 27, 1998, the respondent called up for hearing her motion for a mistrial, which had been taken under advisement by the court. The hearing on the motion was held on May 4, 1998. After the hearing, the trial court took it under advisement. As a result, on May 12, 1998, the respondent filed a motion for new trial alleging, *inter alia*, that the appellant had

improperly injected the issue of insurance into the case causing her prejudice. On June 22, 1998, the trial court entered its order sustaining the respondent's motion for mistrial. In its order, the trial court stated its belief that it was improper for the appellant to testify about insurance even after the reference to insurance by the respondent in her testimony.

On July 2, 1998, the appellant filed her notice of appeal to this court as to the order of the trial court granting the respondent a mistrial. Thereafter, on July 24, 1998, the trial court entered an order indicating that its earlier order granting a mistrial was not a final, appealable order, and as such, it was granting the respondent's motion for a new trial. The appellant filed her notice of appeal of this order on August 3, 1998. The appeals were subsequently consolidated.

On August 31, 1998, the respondent filed a motion to dismiss the appeal. In her motion, she alleged that no document denominated a "judgment" had ever been filed, thereby depriving this court of jurisdiction pursuant to Rule 74.01 [1] and *City of St. Louis v. Hughes,* 950 S.W.2d 850 (Mo. banc 1997). She further alleged that because no final judgment had been entered in the case, the trial court retained jurisdiction to grant her motion for mistrial on June 22, 1998, and that the granting of a mistrial was not an appealable order. On September 14, 1998, this court entered its order sustaining the respondent's motion to dismiss the appeal in WD 56024 as to the appeal from the order granting a mistrial, finding that the trial court's order granting a mistrial was neither final nor otherwise appealable pursuant to § 512.020.[2] However, the motion to dismiss as to the order granting the new trial was taken with the case.

This appeal follows.

## Respondent's Motion to Dismiss the Appeal as to the Order For a New Trial

■ Before we can address the merits of the appellant's appeal, concerning whether the trial court erred in granting the respondent's motion for a new trial, we must first consider the respondent's motion to dismiss.

In her motion, the respondent contends that we should dismiss the appellant's appeal because the issue raised by her, whether the trial court's order awarding her a new trial was erroneous, was rendered moot by its prior order granting her motion for a mistrial, which was not appealable. *See State ex rel. Chastain v. City of Kansas City,* 968 S.W.2d 232, 237 (Mo.App.1998) (holding that the "mootness of a controversy is a threshold question in any appellate review of that controversy"); *Helton Constr. Co. v. Thrift,* 865 S.W.2d 419, 422 (Mo.App.1993) (holding that no appeal lies from an order granting a mistrial). The record reflects that prior to the trial court's granting the respondent's motion for a new trial, it granted her motion for a mistrial, which was made during the trial, taken under advisement, and not ruled upon until approximately one month after the jury's verdict had been received and accepted, and the jury discharged. Thus, the issue we must decide, in determining the respondent's motion to dismiss, is whether the trial court's grant of the respondent's motion for a mistrial mooted the subsequent granting of her motion for a new trial.

A "mistrial" is generally defined as an:

erroneous, invalid, or nugatory trial ... Trial which has been terminated *prior to* its normal conclusion. A device used to halt trial proceedings when error is so prejudicial and fundamental that expenditure of further time and expense would be wasteful if not futile ... 'Mis-

---

1. All rule references are to the Missouri Rules of Civil Procedure (1998), unless otherwise indicated.

2. All statutory references are to RSMo 1994, unless otherwise indicated.

trial' is equivalent to no trial and is a nugatory trial while 'new trial' recognizes a completed trial which for sufficient reasons has been set aside so that the issues may be tried de novo.

■ BLACK'S LAW DICTIONARY 1002 (6 th ed.1990) (emphasis added). Given this definition, it is axiomatic that "[p]rior to the entry of a verdict by a jury, a mistrial is procedurally correct. But once a verdict has been entered, the trial is complete for purposes of appellate review...." *People v. Jamerson*, 196 Colo. 63, 580 P.2d 805, 807 (1978). This is so in that where a trial is allowed to continue to its conclusion, the purpose for declaring a mistrial, to terminate the trial when error is so prejudicial and fundamental that expenditure of further time and expense would be wasteful if not futile, no longer exists. Hence, procedurally, once a trial is concluded, a trial court cannot grant a motion for a mistrial. In this circumstance, its only option to correct an alleged trial error would be to order a new trial. Given the foregoing, the trial court's order, here, granting the respondent's motion for a mistrial after the trial was concluded, was a nullity.

■ Having decided that the trial court's order granting a mistrial was a nullity, we must next address the respondent's claim that the order granting a new trial was not final and appealable in that no written document denominated a "judgment" was ever filed as required by Rule 74.01 and *City of St. Louis v. Hughes*, 950 S.W.2d 850 (Mo. *banc* 1997).

In *Hughes*, the Missouri Supreme Court held that, in the absence of one of the exceptions expressly set out in § 512.020, a prerequisite to appellate review is that there be a final judgment, denominated as such by the trial court. *Id.* at 852–53. As noted in *Hughes*, the right to appeal is governed by § 512.020 which, provides, in pertinent part:

Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings,

may take his appeal to a court having appellate jurisdiction from any *order* granting a new trial....

(Emphasis added.) Rule 74.01(a) defines judgment as "a decree and any order from which an appeal lies." Thus, the appeal here, from an order granting the respondent a new trial, is expressly contemplated by the statute and the rule. As such, the trial court was not required to enter a final "judgment," denominated as such, before the appellant had a right to appeal the trial court's grant of a new trial.

For the reasons stated, the respondent's motion to dismiss is overruled.

### Troester's Appeal

### Standard of Review

■ A trial court has great discretion in determining whether to grant a new trial. *McGraw v. Andes*, 978 S.W.2d 794, 801 (Mo.App.1998). Its decision is presumed to be correct and will be reversed on appeal only for an abuse of discretion. *Id.* An abuse of discretion occurs where the trial court's ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Id.* "It cannot be said that the trial court abused its discretion where reasonable persons could differ over the propriety of its ruling." *Id.* However, the granting of a motion for a new trial can be an abuse of discretion where it is based on findings that are not substantially supported by the record. *VonSande v. VonSande*, 858 S.W.2d 233, 237 (Mo.App.1993).

■ "In order for the trial court to grant a motion for new trial, the error complained of as a basis for the motion must be prejudicial to the party seeking the new trial." *Balke v. Central Mo. Elec. Coop.*, 966 S.W.2d 15, 25 (Mo.App.1997). The complaining party must show that some trial error or misconduct of the prevailing party was responsible for prejudicing the jury. *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 372 (Mo. *banc* 1993); *Nor-*

*ris v. Barnes,* 957 S.W.2d 524, 528 (Mo. App.1997).

## I.

■ In her first point, the appellant claims that the trial court erred in granting the respondent a new trial based on the appellant's mentioning insurance in her trial testimony because the respondent was not prejudiced thereby in that she had previously injected the issue of insurance into the case. In contending that she was entitled to a new trial, the respondent relies on the following exchange during direct examination of the appellant by her attorney:

> Mr. Park: What arrangements are there for assistance of students and student athletes in the event of accident or injury while participating in sporting activities or athletic activities on the campus?
>
> Mr. Kempton [respondent's attorney]: May we approach the bench?
>
> The Court: Yes.
>
> Mr. Kempton: I'm not sure where this is going, but I want to object to it if it's going to open up the collateral source of any insurance benefits in the testimony.
>
> Mr. Park: No. You called Gina Willomet [sic], or whatever. I want her to talk about the relationship between Gina Willomet's [sic] department and her cheerleaders.
>
> Mr. Kempton: Why don't you ask her that? I don't want anything involved about any insurance.
>
> Mr. Park: No no. And she has been instructed not to do that.
>
> Mr. Kempton: Okay.
>
> Mr. Park: Would you please read back the last question?
>
> The reporter: "Question: What arrangements are there for assistance of students and student athletes in the event of accident or injury while participating in sporting activities or athletic activities on the campus?"

The appellant: We have insurance as provided—

Mr. Park: No. What about—Do you know Gina Willomet [sic]?

■ In her written motion for a new trial, the respondent alleged that she was entitled to a new trial because the trial court had erred in not granting her motion for a mistrial, which was predicated on an allegation that the appellant had injected the issue of insurance into the case in violation of the collateral source rule, causing her prejudice.[3] A claim of error on appeal is limited to that advanced in the motion for new trial, and we will not consider a different ground of objection. *Ayers v. Aurora Enters., Inc.,* 899 S.W.2d 913, 914 (Mo.App.1995). Because the respondent's motion for a new trial referenced her motion for a mistrial, which in turn was predicated on a violation of the collateral source rule, in determining whether the trial court abused its discretion in granting the respondent a new trial, we must first address whether the appellant's mention of insurance violated the collateral source rule.

■ " 'The collateral source rule is an exception to the general rule that damages in tort should be compensatory only.' " *Washington ex rel. Washington v. Barnes Hosp.,* 897 S.W.2d 611, 619 (Mo. banc 1995)(quoting *Overton v. United States,* 619 F.2d 1299, 1306 (8th Cir. 1980)). The rule prevents a tortfeasor from reducing its liability to an injured person by proving that payments were made to the person from a collateral source. *Id.* Specifically, the rule provides that:

> 'a wrongdoer is not entitled to have the damages to which he is liable reduced by proving that [the] plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him, or, stated more succinctly, the wrongdoer may not

3. At the time the respondent filed her motion for a new trial, the trial court had not yet ruled on her motion for a mistrial.

**648** ◼

be benefited by collateral payments made to the person he has wronged.' *Id.* at 621 (*quoting Collier v. Roth,* 434 S.W.2d 502, 506–07 (Mo.1968)). The justification for the rule is that the " 'wrongdoer should not benefit from the expenditures made by the injured party in procuring the insurance coverage.' " *Id.* at 620 (*quoting Florida Physician's Ins. Reciprocal v. Stanley,* 452 So.2d 514, 515–16 (Fla.1984)).

◼ Under the rule, whether the plaintiff has insurance coverage that will pay his or her damages is irrelevant. Thus, the application of the rule prevents an alleged tortfeasor from attempting to introduce evidence at trial that the plaintiff's damages will be covered, in whole or in part, by the plaintiff's insurance. *Id.* at 619. Where the plaintiff has incurred no expense, obligation, or liability in securing the insurance coverage in question, the collateral source rule has no application. *Id.* at 621. Here, when the appellant mentioned insurance in her testimony, she used the term "we" to indicate to whose insurance she was referring. Given the question, to which she was responding, we take "we" to mean insurance provided by her employer, CMSU. The appellant made no mention of any insurance coverage for which the respondent incurred expense, obligation or liability and which would indemnify her for the injuries she sustained in the accident. As such, the collateral source rule was not implicated in this case, and the trial court erred in granting a new trial on this basis.

◼ "[T]he collateral source rule is not a single rule but rather, a combination of rationales applied to a number of different circumstances to determine whether evidence of mitigation of damages should be precluded from admission." *Id.* at 619. With this as a given, various rationales have been recognized by our appellate courts for applying the collateral source rule, where the plaintiff did not in the strict sense incur expense, obligation, or liability with respect to the insurance coverage in question, to prevent defendants from informing juries of: benefits from

plaintiffs' employers, *see Douthet v. State Farm Mut. Auto Ins. Co.,* 546 S.W.2d 156, 159-60 (Mo. banc 1977); and governmental benefits, *see Cornelius v. Gipe,* 625 S.W.2d 880, 882 (Mo.App. 1981); *Hood v. Heppler,* 503 S.W.2d 452, 454-55 (Mo.App. 1973); and *Weeks-Maxwell Const. Co. v. Belger Cartage Service, Inc.,* 409 S.W.2d 792, 796 (Mo.App. 1966). *Id.* at 619-20. Missouri courts have split on applying the rule in the case of gratuitous services rendered to a plaintiff as a result of his or her special status. *Id.* at 620. Even if we were to assume, *arguendo,* that the collateral source rule applied here, based on one of the foregoing rationales, the record would still have to support a finding of prejudice by the trial court before a new trial would have been proper. *Keene Corp.,* 855 S.W.2d at 372; *VonSande,* 858 S.W.2d at 236.

◼ Any error in admitting evidence of payment of benefits from a collateral source is presumed prejudicial. *Kickham v. Carter,* 335 S.W.2d 83, 90 (Mo. 1960). Hence, in order to defeat the respondent's motion for a new trial, assuming that the rule applied, the appellant was required to rebut the presumption that her mentioning of insurance was prejudicial. In this respect, she argues that the trial court abused its discretion in finding resulting prejudice to the respondent by her mentioning of insurance in that: (1) it did not specify the type of insurance she was referencing; (2) it only went to the issue of damages, and by finding zero fault on the part of the appellant, the jury never reached the issue of damages; and (3) it occurred only after the respondent had already testified as to benefits from her own insurance.

There are several justifications for our finding that the trial court abused its discretion and erred in granting a new trial. First, as the appellant contends, given the question asked and the incomplete answer given when the appellant's trial counsel cut her off, the appellant's mentioning of insurance did not tell the jury what type

insurance was being referenced and whether it would, in fact, cover the respondent's injuries. As such, the jury would not have been advised as to whether the respondent's medical bills were paid by a collateral source. Second, in *Cornelius v. Gipe*, 625 S.W.2d 880, 882 (Mo.App. 1981), this court held that where the jury finds for the defendant on the issue of liability and, thus, does not reach the issue of damages, there is no prejudice from the plaintiff's mentioning of a collateral source, the rationale being that the collateral source rule relates only to damages.[4] Hence, because the jury here found the appellant to be zero percent at fault, no prejudice resulted by reason of her mentioning of insurance. Third, as a general rule, the issue of whether the plaintiff's mentioning of a collateral source opens the door for the defendant to inquire about collateral sources of benefits is within the sound discretion of the trial court. *Hughey v. Graham*, 604 S.W.2d 626, 628-29 (Mo.App. 1980). However, that issue is different from the issue of determining the prejudice of such a statement. Logically, the rule would not prevent consideration of this fact by a court in determining whether prejudice resulted from the defendant's inadvertently mentioning a collateral source of benefits.[5] Because in our case the respondent had already advised the jury of her own insurance and the dispute concerning payment of her doctor's bills, we fail to see how, under any reasonable analysis, the subsequent brief and inchoate statement by the appellant regarding some type of insurance provided by CMSU prejudiced the respondent, requiring a new trial.

For the reasons stated, we find that the trial court erred in granting the respondent's motion for a new trial based on the appellant's mentioning of insurance at trial in violation of the collateral source rule.

As our resolution of this point is dispositive of the appeal, we do not address the appellant's remaining points.

### Conclusion

The order of the trial court granting the respondent a new trial is reversed and the cause is remanded for reinstatement of the jury's verdict for the appellant.

All concur.

---

4. When faced with this issue, the Eastern District reached an opposite result in *Spengel v. Kantor*, 736 S.W.2d 51, 52 (Mo.App. 1987).

5. The record reflects that the trial court found that there was no "ill intent" on the part of the appellant in mentioning insurance.