**Diane BUATTE, Plaintiff/Appellant,**

v.

**SCHNUCK MARKETS, INC.,
Defendant/Respondent.**

No. ED 78788.

Missouri Court of Appeals,
Eastern District,
En Banc.

Nov. 19, 2002.

Application for Transfer to Supreme
Court Denied Feb. 20, 2003.

Application for Transfer Denied
April 1, 2003.

---

[1]. All rule references are to Mo. R.Crim. P.2002, unless otherwise indicated.

Leonard P. Cervantes, Jennifer L. Suttmoeller, St. Louis, MO, for appellant.

Michael B. Maguire, T. Michael Ward, St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Diane Buatte ("Buatte") sued Schnuck Markets, Inc. ("Schnucks") for negligence as a result of her slip and fall at one of Schnucks' grocery stores. The jury returned a verdict of $12,500 in damages and assessed fifty percent fault to Buatte and Schnucks. The present appeal follows. Buatte asserts plain error in the display of a medical record to the jury containing reference to Blue Choice insurance; that the trial court erred in making a comment to the jury concerning the time of their deliberations; and that the trial court erred in submitting a comparative fault instruction to the jury because no substantial evidence supported such instruction. We affirm.

We view the evidence in the light most favorable to the jury's verdict. *Hemeyer v. Wilson*, 59 S.W.3d 574, 576 (Mo.App. 2001). On the evening of July 26, 1993, Buatte entered Schnucks and was walking through the store when she slipped on a puddle of clear liquid and fell. There were no cones or barricades around the puddle. Buatte testified that she did not look at the floor as she walked through the aisle and she was not carrying a basket or pushing a cart at the time. As she walked into the area where she fell, she saw a store employee with a mop and a bucket. Buatte testified that after her fall, when she looked down at the floor, she could see the puddle of liquid. Buatte then spoke with a store employee, as well as the store manager. She provided the manager with her name and phone number and information about her injury. Buatte and the manager returned to the area where she fell and the liquid was being mopped up and cones surrounded the area. When she finished speaking with the manager, Buatte concluded her shopping and went home.

Two days after her fall, Buatte went to the emergency room at St. Mary's Health Center with complaints of knee pain. An x-ray was performed on her knee, and she was diagnosed with a contusion. Buatte did not make any complaints of back pain at this time. Following her visit to the emergency room, Buatte did not seek medical attention until September when she visited Dr. Jacob Sosna. She complained of pain in her arm and knee, and Dr. Sosna referred her to an orthopedic surgeon and a physical therapist. Buatte saw Dr. Tessier, the orthopedic surgeon; but did not

complain to Dr. Tessier of back pain until February of 1994. After Buatte expressed complaints of back pain, Dr. Tessier referred her to Dr. Hollocher, an orthopedic surgeon who specialized in back injuries. In March 1994, an MRI performed on Buatte showed that she had a herniated lumbar disc. Buatte subsequently underwent surgery in May and November 1994, neither of which improved her back problems.

Buatte continued to experience back pain, and she saw Dr. Strickland, who advised her that the problems stemmed from being overweight. She sought additional opinions from physicians at the Mayo Clinic. Buatte then returned to St. Louis and consulted Dr. Joseph Hanaway, a neurologist, who referred her to Dr. Cole, a neurosurgeon. After a second MRI showed herniation of the disc, Buatte underwent a third surgery in December of 1995. Following the third surgery, Buatte developed neck problems. An MRI of her neck showed a herniated disc, and she underwent surgery for this as well.

At trial, Buatte presented evidence that her medical bills totaled $49,059.88, which did not include costs for special equipment she required, such as a special chair for her office, and a TENS unit. She testified that she experiences constant pain for which she takes narcotic pain medication.

Prior to her fall at Schnucks, Buatte was involved in a car accident. She was treated by Dr. Fitelson, a chiropractor, in 1992 for her neck and back pain resulting from the accident. Upon her release, Dr. Fitelson noted that Buatte might be predisposed to degenerative changes or other problems as a result of the accident.

During trial, a page of the medical records kept by Dr. Tessier, marked Exhibit M, was used by both counsel for Buatte and for Schnucks. Both parties read from Exhibit M, and counsel for Schnucks displayed the exhibit to the jury during his closing argument with no objection by counsel for Buatte. The same page was also displayed during the playing of the video deposition of Dr. David Peeples, Schnucks' medical expert, again, with no objection by Buatte's counsel. On the top left corner of the page, Buatte's name, apparent address and phone number was listed. Across the page, in the top right corner, was a line with "Insurance" pre-printed on it, and the words "Blue Choice" hand-written on the line next to the word "Insurance." The parties stipulated that the medical records would not be taken to the jury room during deliberations. In her motion in limine, which was filed with the court on July 10, 2000, Buatte requested that Schnucks be prevented from presenting: "[a]ny and all comment, testimony, or evidence that [Buatte] may have received payments from medical insurers or other collateral sources, or that her medical bills were paid by insurance, whether she has received or may receive disability insurance or benefits ... because the receipt of such collateral payments is irrelevant, immaterial and prejudicial." Schnucks concedes that it agreed not to present any such evidence.

The jury returned a verdict of $12,500 in damages and assessed fifty percent fault to both Buatte and Schnucks. Buatte's motion for new trial or for additur and amendment of judgment was denied, and the present appeal followed.

In her first point on appeal, Buatte claims that it was plain error for counsel for Schnucks to display Exhibit M to the jury during his closing argument. Buatte claims that the display of "Blue Choice" hand-written next to the pre-printed word "Insurance" violated the collateral source rule and subsequently prejudiced her. Schnucks argues that Buatte is not entitled to plain error review because the use

of Exhibit M did not result in a miscarriage of justice. As support for its contention that a manifest injustice or miscarriage of justice did not result from the display of the exhibit, Schnucks contends that: 1) not only did Buatte fail to object to the use of the exhibit during the video deposition of Dr. David Peeples or during closing argument, but also Buatte used Exhibit M herself; 2) Schnucks did not use the exhibit to demonstrate that Buatte's medical bills had been paid by another source; 3) the reference to Blue Choice on Exhibit M did not violate the collateral source rule or cause prejudice to Buatte; and 4) the trial court expressly found no surprise by the use of the exhibit.

Buatte's counsel did not object when Exhibit M was displayed to the jury during the playing of the video deposition of Dr. Peeples, nor did her counsel object when it was displayed to the jury during Schnucks' closing argument. As a result, we review this point for plain error. "Relief under plain error standard of review is granted sparingly and is reserved for those situations in which hatred, passion or prejudice has been engendered, resulting in manifest injustice or miscarriage of justice." *Moore v. Missouri–Nebraska Express, Inc.*, 892 S.W.2d 696, 710 (Mo.App. 1994). This standard of review is rarely extended to civil cases except to prevent such injustice. *Chilton v. Gorden*, 952 S.W.2d 773, 781 (Mo.App.1997).

"The collateral source rule is an exception to the general rule that damages in tort should be compensatory only." *Duckett v. Troester*, 996 S.W.2d 641, 647 (Mo.App.1999) (*quoting Washington ex rel. Washington v. Barnes Hosp.*, 897 S.W.2d 611, 619 (Mo. banc 1995)). Generally, the purpose of the collateral source rule is to prevent a wrongdoer from mitigating damages by proving that payments were made to a person from a collateral source. *Id.*

Specifically, "a wrongdoer is not entitled to have the damages to which he is liable reduced by proving that [the] plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him, or, stated more succinctly, the wrongdoer may not be benefited by collateral payments made to the person he has wronged." *Id.* at 647–48.

Buatte relies upon *Kickham v. Carter*, 335 S.W.2d 83 (Mo.1960) for the proposition that a presumption of prejudice exists where evidence of payments by a collateral source is introduced. Buatte claims that such prejudice should be presumed in this case. In *Kickham*, the court determined that the admission of testimony by plaintiff that Blue Cross had paid his hospital bills was prejudicial. However, *Kickham* is distinguishable from the instant case. There, unlike here, the claim of error had been preserved in the trial court. *Kickham*, 335 S.W.2d at 89. In the present case, both attorneys read portions of Exhibit M to the jury, and to that extent the exhibit was admitted into evidence without objection. The page from Dr. Tessier's medical records, which was enlarged to constitute Exhibit M, was shown to the jury, without objection, during the playing of the video deposition of Dr. David Peeples at trial. Buatte failed to preserve any claim of error.

Although evidence of payments received from a collateral source is inadmissible over a proper objection, the error is waived in the absence of a proper and timely objection. *Crabtree v. Reed*, 494 S.W.2d 42, 44–45 (Mo.1973). In *Crabtree*, during cross-examination of the plaintiff the defendant's counsel specifically asked whether the plaintiff had insurance that had actually paid some of his medical bills. The plaintiff admitted part of the bills had been paid by insurance. Defendant's

counsel then asked whether the plaintiff was seeking a double recovery. The plaintiff replied "No, sir." On appeal, the Missouri Supreme Court agreed that the defendant should not have been allowed to adduce this evidence, but denied relief on appeal because plaintiff had not objected based on the collateral source doctrine at the time the testimony was adduced. *Id.; Meyer v. Clark Oil Co.,* 686 S.W.2d 836, 838 (Mo.App.1984).

■ Likewise in this case, plaintiff's counsel made no objection to Schnucks' use of Exhibit M and made use of it himself during the trial. Moreover, in her point relied on Buatte only alleges error in Schnucks' use of Exhibit M during closing argument. Nowhere in her point relied on does Buatte assert error in the display of Exhibit M during the playing of Dr. Peeples' deposition, where the same information she complains of was clearly visible. Because the display of Exhibit M during closing argument was merely cumulative to the display of Exhibit M during Dr. Peeples' deposition, which Buatte does not mention in her point relied on, Schnucks' use of Exhibit M was merely cumulative and provides no basis for relief on appeal. *Dunn v. St. Louis–San Francisco Ry. Co.,* 621 S.W.2d 245, 252 (Mo. banc 1981).

■ Nor do we find a clear violation of the collateral source rule by reason of the mere display of Exhibit M to the jury. In *Duckett,* a student cheerleader filed a personal injury suit against the athletic director of her school. During direct examination at trial, counsel for the athletic director asked her what arrangements were available for injured students. Counsel for the student made an objection to the admission of collateral source testi-

mony and counsel for the director assured the court and opposing counsel that the client had been advised not to discuss insurance. Regardless of the admonishment not to discuss insurance, the director replied: "We have insurance as provided—." *Duckett,* 996 S.W.2d at 647. The court determined that because no mention was made of insurance coverage for which the student herself incurred expense and which would indemnify her for injuries, the collateral source rule was not applicable. *Id.* at 648.[1]

In the present case, as in *Duckett,* no testimony was elicited showing that Buatte herself incurred expense in obtaining insurance coverage. Here, as in the *Duckett* case, no testimony, nor any other evidence, was admitted at trial to indicate that Buatte in fact had insurance, nor that such insurance covered any of her medical expenses. But we do not need to decide whether the collateral source rule is implicated in the instant case because the issues of resulting prejudice and potential plain error are dispositive.

■ As the trial court observed, Buatte's claim of prejudice was based upon the hearsay statements of a juror in an affidavit. Public policy prohibits the impeachment of jury verdicts, and the testimony of a juror is inadmissible to impeach the verdict. *Neighbors v. Wolfson,* 926 S.W.2d 35, 37 (Mo.App.1996). Therefore, the affidavit cannot be relied upon to establish prejudice. There is no other evidence in the record to show prejudice. Buatte's claim of prejudice is thus based on pure speculation: speculation that the jurors noticed what two experienced counsel did not; speculation that the jurors

---

1. Although Buatte dismisses this holding in *Duckett* as *dicta,* it is well established that when an appellate court bases its decision on two or more distinct grounds each is deemed authoritative. *City of St. Louis v. Riverside Waste Management, L.L.C.,* 73 S.W.3d 794, 806 n. 5 (Mo.App.2002).

presumed it meant that Buatte's medical bills were paid by insurance she paid for; and speculation that the jury reduced its verdict as a result.

Moreover, the record in the present case does not support a finding of prejudice. The exhibit did not make any specific reference to whether Buatte had insurance, whether such insurance covered any of Buatte's medical expenses, or whether Buatte incurred any expense in obtaining insurance which would indemnify her for her injuries sustained in the accident. Here, both parties read from Exhibit M, it was shown to the jury during the video deposition of Dr. David Peeples, and counsel for Buatte made no objection to the use of the exhibit at trial nor during the deposition of Dr. Peeples. Exhibit M was not passed to the jury, nor was it allowed to be taken to the jury room during deliberations. Defense counsel made no reference at all to insurance when he displayed Exhibit M to the jury during his closing argument, and no objection was made to his display of the exhibit. Furthermore, in its order denying Buatte's motion for new trial or for additur and amendment of judgment, the trial court specifically found that no surprise resulted from the use of the exhibit.

In addition, Buatte argued that she was entitled to damages for pain and suffering for her conditions as well as future lost income as a result of her injuries. She testified that she experiences constant pain and is required to take narcotic pain medication as a result. Buatte also stated that she has difficulty doing her work, and she may have to retire early. These damages were in addition to the approximately $50,000 claimed for medical bills. Had the jury believed Buatte's evidence that the fall at Schnucks was the cause of her severe and potentially disabling back problems, she clearly would have been entitled to substantial damages regardless of whether her medical bills had been paid. However, the jury chose to award Buatte only $12,500 in total damages. The record rebuts any presumption of prejudice resulting from the admission of evidence of any payments from a collateral source.

■ The displaying of Exhibit M to the jury during closing argument as well as during the playing of the video deposition of Dr. David Peeples, and the reading from the exhibit, all without objection and with no reference whatsoever to insurance, did not result in a manifest injustice or miscarriage of justice. There was no plain error. Point denied.

In her second point on appeal, Buatte argues that the trial court erred in advising the jury after closing argument and before deliberations that "when you're ready to see us again, you let us know. This time you have all the control, and you can keep us waiting as long as you want or get out of here as quick as you want." Buatte claims that as a result of the court's comment, a mistrial should have been granted because the statement was an impermissible instruction, which implied that Buatte's case was not important. Buatte further argues that this statement was so prejudicial that it could not be corrected by the trial court's reading of subsequent curative instruction drafted by counsel for Buatte.

A mistrial is a drastic remedy. *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 208 (Mo. banc 1991). The decision to grant a mistrial rests largely within the trial court's discretion. *Id.* We review such a decision only for abuse of discretion. *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 867 (Mo. banc 1993). In order to establish manifest abuse of discretion, there must be an error so grievous that prejudice cannot other-

wise be removed. *Seabaugh,* 816 S.W.2d at 208.

Initially, we note that a trial judge must act with an impartial attitude. *Callahan,* 863 S.W.2d at 867. "It is improper for a judge by act, conduct or remark to color the neutral status that role entails." *Elam v. Alcolac, Inc.,* 765 S.W.2d 42, 212 (Mo. App.1988). In the present case, however, the trial court stated on the record that the comment was not intended to bias the jury, but rather was intended as a humorous statement. The court explained that "juries in my experience, the juries spend a lot of time waiting for the Court and the lawyers, and they get very aggravated, and what I try and do is diffuse a little of that anger that builds up...." The trial court offered to remedy the statement and a curative comment was drafted by counsel for Buatte and read by the court stating, "[a]ny remarks I might have made at the end of the closing argument concerning the length of time that you can spend on deliberations, or that you could spend a long time or a short time on your deliberations, were not intended as a comment on the case or to suggest that you should not take the case seriously for either side." We find nothing in the record to indicate that the statement made by the court was so prejudicial as to not be cured by the comment drafted by counsel for Buatte. The trial court did not abuse its discretion in denying Buatte's motion for mistrial. Point denied.

In her final point on appeal, Buatte claims that the trial court erred in submitting a comparative fault instruction to the jury. Buatte argues that there was no substantial evidence that she failed to keep a careful lookout or that she could have seen the liquid on the floor in advance to avoid slipping on it.

"The issue of whether the jury was properly instructed is a question of law and is to be determined on the record with little deference given to the trial court's decision." *Rudin v. Parkway School Dist.,* 30 S.W.3d 838, 841 (Mo.App. 2000). We review the evidence in the light most favorable to the submission of the instruction. *Id.* Additionally, we will reverse errors concerning comparative fault instructions only where there is substantial potential for prejudice. *Id.*

"If there is evidence from which a jury could find that plaintiff's conduct was a contributing cause of her damages, parties to a negligence action are entitled to have their case submitted to the jury under comparative fault principles, absent an agreement to the contrary." *Rudin,* 30 S.W.3d at 841. If the comparative fault instruction is supported by substantial evidence, it is proper. *Id.* Such evidence is dependent upon the facts presented. *Id.*

Here, evidence was introduced at trial that Buatte did not look at the floor at any time while walking through the grocery store aisle. It was also shown that she did not carry any basket or push a cart that would have obstructed her view. Buatte testified that she could see the liquid on the floor when she looked down after her fall, and that as she walked to the area where she fell, she saw a store employee with a mop and bucket. Even after she saw the mop and bucket, Buatte testified that she never considered that the floor was wet. There was substantial evidence to support the submission of a comparative fault instruction. Therefore, the trial court did not err in submitting the issue of comparative fault to the jury. Point denied.

The judgment of the trial court is affirmed.

PAUL J. SIMON, KATHIANNE KNAUP CRANE, LAWRENCE G. CRAHAN, MARY R. RUSSELL, MARY K. HOFF, and SHERRI B. SULLIVAN, JJ., concur.

LAWRENCE E. MOONEY, C.J., concurs in result.

ROBERT G. DOWD, JR., J., dissents in separate opinion.

WILLIAM H. CRANDALL, JR., GEORGE W. DRAPER III, and GLENN A. NORTON, JJ., dissent and concur in dissenting opinion of Judge DOWD.

GARY M. GAERTNER SR., J., not participating.

ROBERT G. DOWD, JR., Judge, dissenting.

I respectfully dissent. A finding of plain error is appropriate in this case where defendant, prior to trial, made an agreement not to introduce any reference to plaintiff's medical insurance as a collateral source and then twice showed an exhibit containing insurance information. I agree with the majority that plain error is sparingly granted in civil cases. However, this does not mean plain error may never be granted. This court is to consider plain error affecting substantial rights even though the error had not been preserved for review, when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom. Rule 84.13(c). Plain error is reserved for situations where the error complained of has engendered hatred, passion, or prejudice. *Robertson v. Cameron Mutual Ins. Co.*, 855 S.W.2d 442, 447 (Mo.App. W.D.1993). I believe this case rises to that level.

Errors in admitting evidence of payments of benefits from a collateral source are presumed prejudicial. *Duckett v. Troester*, 996 S.W.2d 641, 648 (Mo.App. W.D.1999). Moreover, the presumption of prejudice was not rebutted. The exhibit in question was a 30–inch × 40–inch blowup

of a medical record. On the top right across from plaintiff's name and address was a line with the word "Insurance" followed by "Blue Choice." Before trial, plaintiff filed a motion in limine to bar any reference to a collateral source, and defendant, acknowledging its prejudice, agreed not to present any. Again, before closing argument, defendant agreed that they were not offering the medical records in their entirety, but only the portions read to the jury and that the medical records would not be passed to the jury. Despite these agreements, defendant twice displayed the 30–inch × 40–inch exhibit in plain view to the jury and failed to redact the insurance information. When an exhibit is shown to a jury, we assume they saw it. There is no doubt the reference to Blue Choice insurance coverage was displayed to the jury, they saw it, and they were capable of understanding its import. As a result, the jury was left with the impression plaintiff was trying to recover for medical bills that insurance had paid, an impression that was left without further explanation. The resulting verdict is consistent with the jury taking into account plaintiff's medical coverage.[1] Plaintiff was not only prejudiced specifically with regard to the information concerning her medical insurance, but very well "may have been prejudiced generally in the eyes of the jury," affecting their view of her overall credibility and the entire case. *See Kickham v. Carter*, 335 S.W.2d 83, 90 (Mo. 1960).

The majority states the presumption was rebutted because both plaintiff and defendant made reference to the exhibit. Plaintiff did make use of the exhibit at trial by reading a relevant portion of the record, but there is no evidence that plaintiff ever showed the exhibit to the jury.

---

1. We agree with the majority that the affidavit may not be used to impeach the jury verdict. We do not rely on the affidavit, however, in order to show plaintiff was prejudiced by the jury's improper exposure to the collateral source evidence.

The mere reading from the exhibit was not an acquiescence to show the jury the exhibit containing a reference to insurance. Plaintiff was not surprised by the use of the relevant portions of the exhibit. The surprise, however, came when defendant showed the exhibit containing the reference to plaintiff's medical insurance on two occasions at trial after there was an agreement that no such evidence would be introduced at trial. Here, plaintiff's failure to object was directly due to his justifiable reliance on defendant's agreement. As a result of this agreement, plaintiff was entitled to expect that all such evidence of insurance as a collateral source would not be shown to the jury.

The error in allowing the collateral source information to be presented to the jury engendered prejudice, which affected the verdict to plaintiff's detriment, and thereby resulted in manifest injustice. Plaintiff is entitled to a new trial. Accordingly, I would reverse the judgment and remand for a new trial.