### CITY OF PORTAGE DES SIOUX, Respondent,

v.

### Klaus LAMBERT and Constance B. Alt, Appellants.

#### No. ED 84658.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 16, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 10, 2006.

Application for Transfer Denied Aug. 22, 2006.

incarcerations. First, Lambert and Alt assert that the trial court erred when it declared a mistrial and remanded the City of Portage Des Sioux ("City")'s petition to the associate circuit court[1] on the grounds that as a circuit court it did not have subject matter jurisdiction over the issue. Lambert and Alt argue that circuit courts and associate circuit courts in Missouri have the same jurisdiction. Second, Lambert and Alt argue that the trial court erred when it severed the criminal case and remanded it to the associate circuit court because jeopardy attached and the remand constituted double jeopardy. Third, Lambert and Alt claim that the trial court erred when it found the remaining structures unfit for use or habitation because there was no substantial evidence to support such finding. Dismissed in part and affirmed in part.

### Procedural Background

The City, a Fourth class city, filed a petition on February 10, 2004, for injunction and fines charging Lambert and Alt with three counts of violating municipal ordinances, concerning their real estate located at 1265 Church Street. The petition claimed that Lambert and Alt, on various dates since 1998, violated multiple ordinances[2] concerning the condition of their property. These conditions included having more than one boat on the property, overgrown lot causing a fire and driving hazard, commercial use of a residential lot and a building structure so damaged such that it constituted a health and safety haz-

William James O'Herin, Florissant, MO, for appellant.

Stephen A. Martin, St. Charles, MO, for respondent.

NANNETTE A. BAKER, Presiding Judge.

Klaus Lambert ("Lambert") and Constance B. Alt ("Alt") appeal from the judgment of the trial court granting a mistrial based on its lack of jurisdiction for municipal violations with penalties of fines and

1. In Missouri, there are no associate circuit courts. Rather, the correct terminology is "circuit court with associate circuit judges." MO. CONST. art. V, section 16. However, the trial court's judgment referenced "the associate circuit court" and both parties used the term in their briefs. For clarity, we will refer to the actual language used by the parties although we are aware that this is technically a misnomer.

2. The petition referenced various sections of Ordinance 157 and Section 2(a) of Ordinance 141.

ard. The petition sought injunctive relief as well as fines and incarceration.

On February 18, 2004, before the start of the trial, Lambert and Alt filed a request for a jury trial. City's counsel expressed concern to the court that this was a delay tactic. The court, having a venire panel available, granted the request on the condition that the trial proceed that day. After a jury was seated, the counsel for each party discussed whether to hold a bifurcated or non-bifurcated trial on the issues of liability and punishment. On the advice of their attorney, Lambert and Alt agreed on the record to waive any request for bifurcation.

The trial court then began hearing evidence on the case involving municipal ordinance violations. Sometime after six o'clock P.M. during the February 18 hearing, the trial court sua sponte declared a mistrial on the basis that the circuit court lacked jurisdiction for municipal violations with penalties of incarceration and fines, and continued the hearing on injunctive relief until the March 31 hearing.

### The Mistrial

In their first point relied on, Lambert and Alt claim that the trial court erred when it declared a mistrial on the grounds that as a circuit court it did not have subject matter jurisdiction over municipal ordinance violations. For their second point relied on, they claim that the trial court erred when it severed the criminal case and remanded it to the associate circuit court because jeopardy attached and the remand constituted double jeopardy.

After the day's testimony, the court asked counsel to approach the bench. Following a discussion that was off the record, the court quoted from Section 479.130:[3] "Any person charged with the violation of a municipal ordinance of a city of the third or fourth class shall be entitled to a trial by jury, as in prosecutions for misdemeanors before an associate circuit judge." The court cited *City of Webster Groves v. Kurt* for the proposition that the circuit court generally lacks jurisdiction over municipal ordinance violation where there is a municipal judge. 797 S.W.2d 494 (Mo. App. E.D.1990). Following a break to determine whether the case remained good law, the parties returned to the record. There was further discussion of whether *Webster Groves* was binding precedent on the current proceedings. The court noted that since the City has no municipal judge, the situation in *Webster Groves* was different in that a municipal judge had rendered a judgment on only two of the counts alleged in the petition and transferred the third count, untried, to the circuit court. *Id.*

The counsel for City disputed the applicability of *Webster Groves* to the case before the court. Counsel further stated that, "if it's the Court's position that it doesn't have jurisdiction as to either the fines or the incarceration, then I would be willing to drop those claims and proceed on the injunction issue if that's what it takes to complete this trial in some timely fashion." The court replied, "What I think it stands for is that you can't originally file municipal ordinance violations in the circuit court ... I think they need to be filed in the associate circuit court per Section 479.130." Referring to Section 479.090, the court quoted, "All prosecutions for the violation of municipal ordinances shall be instituted by information and may be based upon a complaint. Proceedings shall be in accordance with the supreme court rules governing practice and procedure in proceedings before municipal judges." Then the court declared a mistri-

---

3. All statutory references are to RSMo.2004, unless otherwise indicated.

al, but retained jurisdiction over the request for injunctive relief. After the jury was dismissed, the court continued the case to March 31, 2004, "for conclusion of testimony and argument and submission of the case for a request for injunctive relief."

■ A final judgment is a prerequisite to appellate review. *In re Marriage of Boden,* 136 S.W.3d 824, 825 (Mo.App. E.D.2004). If a trial court order is not a final judgment, we lack jurisdiction and must dismiss the appeal. *Id.* An appealable judgment disposes of all issues in a case, leaving nothing for future determination. *Id.* For the judgment to be final and appealable, it must fully determine the rights of the parties. *Id.* If a judgment does not dispose of all of the issues presented by the pleadings and the evidence, it is not final and appealable. *Id.*

A mistrial is generally defined as, "a trial that the judge brings to an end, without a determination on the merits, because of a procedural error or serious misconduct occurring during the proceedings." BLACK'S LAW DICTIONARY 1023 (8th ed.2004). The Southern District considered a similar situation in *Helton Const. Co. Inc. v. Thrift,* 865 S.W.2d 419 (Mo.App. S.D.1993). *Helton* concerned an appeal from a mistrial declared when the judge disqualified himself prior to delivering a ruling. *Id.* at 420. The court stated that "Section 512.020 enumerates the orders, including any final judgment in the case, from which an aggrieved party may appeal. An order of self-disqualification is not an appealable order, and the same is true of an order declaring a mistrial." *Id.* at 422. The Southern District declined to enter a judgment on the appeal "because the first proceeding did not result in an appealable judgment or order." *Id.* at 423.

The Western District considered this issue in *Duckett v. Troester,* 996 S.W.2d 641 (Mo.App. W.D.1999). In *Duckett,* the trial court granted the respondent's motion for a mistrial one month *after* the jury had reached a verdict on the case. *Id.* at 645. Although the Western District ruled that the order granting the motion for a mistrial was a nullity because the trial had already concluded, it entered its order sustaining the respondent's motion to dismiss an earlier appeal from the order granting a mistrial, finding that the trial court's order granting a mistrial was neither final nor otherwise appealable pursuant to Section 512.020.[4] *Id.*

In the case before us, it is clear under Missouri law that the trial court's order granting a mistrial on February 18, 2004 is not a final, appealable order. There was no final resolution of the counts against Lambert and Alt involving penalties of fines and incarceration. Since the grant of a mistrial is not a final, appealable order, we need not address the issue of jeopardy attaching. Thus, we lack jurisdiction and must dismiss the appeal with respect to those issues.

*Injunction*

■ In their third point relied on, Lambert and Alt claim that the trial court erred when it found the remaining structures on their property should not be permitted because they were unfit for use or habitation. Lambert and Alt contend that there was no substantial evidence to support the finding and the City had no right to injunctive relief.

■ The decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erro-

4. RSMo.1998.

neously declares the law, or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong. *Id.*

The phrase "weight of the evidence" means *its* weight in probative value, not the quantity or amount of evidence. *Lee v. Hiler,* 141 S.W.3d 517, 525 (Mo.App. S.D.2004). An appellate court defers to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record. *Id.*

In this case, the trial court relied on the evidence before it to support its finding that the structures on the property Lambert and Alt owned are unfit for use or habitation. Reviewing the record before us, we note that the court heard testimony from three representatives of the City: Susan Cissell, the city clerk for the City; Russell Cissell ("Cissell"), the building inspector and flood plain manager for the City; and Mark Warner ("Warner"), the mayor of the City.

The city clerk testified to the authenticity of copies of the City's relevant municipal ordinance sections that were admitted into evidence. Cissell gave testimony concerning the condition of Lambert and Alt's property. He described the state of the buildings on the property and the number of boats on the various dates that he inspected the lot to determine whether Lambert and Alt were in compliance with the ordinances. According to Cissell, the lot was "severely overgrown" with "several trees that were actually growing into buildings" and one tree was partially blocking the street. Additionally, he described the debris of unlicensed vehicles, scraps of lumber, plastic and other substances littering the grounds. In further violation of a zoning ordinance, Cissell testified that Lambert had informed him that he was using the residential property for commercial purposes, repairing other people's boats.

Warner gave further evidence of the continuing deterioration of the property and the ongoing violations despite the citations going back to 1998. Using photographs that he had taken, Warner pointed out part of a boat and trailer that "ha[d] physically sunk down below dirt level, because it set there for so long" and testified that the boat was visible from the street. The court examined the photographs showing the residence on the property with broken windows boarded up, holes in the walls and foundation. Warner indicated the post that had been part of the front porch. He testified that the porch fell down immediately after the 1993 flood and remained off to the present time.

Lambert and Alt each testified on their own behalf. They stated that they attempted to comply with the various ordinances and disputed the condition of the property described by the City's witnesses. Lambert denied that he ever had a commercial business and that he had no understanding about why he was cited for having a business on the property.

The record before us does not include copies of the various sections of the City's ordinances that were the subject of the petition. Instead, it merely excerpts quotes in the parties' briefs and in the transcript. However, based on the plethora of evidence which was before the trial court, we cannot say that the finding that

the structures were unfit for use or habitation was in error. Point denied.

The judgment with respect to the injunctive relief is affirmed.

ROBERT G. DOWD, JR., J., and SHERRI B. SULLIVAN, J., concur.